Jack WILSON and Lois Culver Bennett, City Clerk of the City of Casper, Natrona County, Wyoming, Appellants (Defendants below),

v.

G. T. BURRIDGE, Appellee (Plaintiff below).

No. 2878.

Supreme Court of Wyoming.

Nov. 17, 1959.

Robert R. Rose, Jr., Arthur F. Fisher, Casper, for appellants.

Fred J. McDermott and Houston G. Williams, Casper, for appellee.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

A municipal election was held in Casper, Wyoming, along with the general election in 1956. Plaintiff G. T. Burridge and Jack Wilson, a defendant in this case, had been duly nominated as candidates for city councilman in Ward 1 of the City of Casper and their names properly appeared on the official municipal ballot used in the election. The officials acting in connection with the general election also at the same time acted as the officials in the municipal election. As a result of the count by the judges and clerks of the election in Ward 1, it appeared that G. T. Burridge received 1,208 votes as city councilman of the foregoing ward and that the defendant Wilson received 1,186 votes, showing that Burridge had been elected. After the election Wilson filed an affidavit in accordance with § 22–296, W.S.1957 (§ 31–1915, W.C.S.1945) alleging a mistake in the count and asking for a recount of the votes. A board to recount the votes was accordingly appointed. That board found that Wilson received 1,189 votes and Burridge 1,182 votes. But when it appeared that not all the ballots in the North Casper Precinct were delivered to, and hence not counted by, the board, Burridge brought this action in the District Court of Natrona County asking that the certificate of election which had been issued to Wilson should be set aside and that he be declared the duly elected councilman of Ward 1 of the City of Casper. The city clerk, Lois Culver Bennett, was made a party defendant but as she is not materially interested in the case it is not necessary to refer to her again. The district court found in favor of the plaintiff Burridge

and from that finding and the judgment rendered in accordance therewith the defendant Wilson has appealed to this court.

Counsel for the plaintiff Burridge, in order to uphold the finding of the trial court, contend that (1) a recount in a municipal election is not authorized by the Wyoming Statutes, (2) the recount in this case was made by unauthorized persons and (3) the integrity of the ballots was not maintained and the same votes that were counted by the judges and clerks of the election were not counted by the board appointed to recount the votes. It is not necessary, we think, to consider the first two contentions and we need to consider only the third.

There were eight precincts in Ward 1. There is little contention in reference to seven of these precincts, that is to say, the precincts outside of the North Casper Precinct. According to the judges and clerks of the election, Burridge had 1,006 votes in the seven precincts and Wilson had 870 votes. In the recount that was made, Burridge had 1,002 votes in the seven precincts and Wilson had 875 votes. The difference in the original count and the recount in these seven precincts would not change the result as found by the judges and clerks of the election.

The main controversy herein relates to the votes in the North Casper Precinct. The poll book of that precinct was introduced in evidence. It shows that 529 votes were cast in the municipal election. Two of the judges of the election testified in this case, namely, Mrs. Carl A. Stanley and Mrs. John Minchow. They both testified that the ballots in the precinct were counted carefully, that 529 ballots were cast in the precinct at the municipal election, that only 518 votes (11 less than 529) were cast for either Burridge or Wilson and that of these 518 votes Burridge obtained 202 votes and Wilson 316. But it is undisputed that only 505 ballots, that is to say 24 less than those cast in that precinct,

were delivered to the board which recounted the votes, and it is by reason of that fact that the trial court found that the recount could not prevail. The trial court made the following findings and stated as follows:

"It is clearly evident that 529 ballots were cast in the precinct, and that 529 people voted. Neither side questions the honesty or competency of the election officials, although of course there is dispute as to the result of their work.

"It is also clear that if the Precinct return is accepted, the plaintiff must prevail even if the recount in all other precincts were accepted.

"The shortage of 24 ballots presented to the Recounting Board raises a serious question as to the integrity of the ballots * * *. I am not satisfied with the testimony on this point. My notes indicate a vagueness in the testimony of the County Clerk, and I do not think that the general situation disclosed as to the removal of the ballots from the box, their loose condition, the management of keys, and the conditions of the storeroom satisfactorily exclude the reasonable probability that in some way 24 ballots were lost, misplaced, or removed by unauthorized persons.

&ast; &ast; &ast; &ast; &ast; &ast;

"Taking all of this evidence as a whole, together with various circumstances not mentioned, I am satisfied that the Recounting Board did not recount all of the ballots cast in the North Casper Precinct, and that it would be wholly unjust for 24 voters to be deprived of their ballot."

Counsel for appellants maintain that the court erroneously found that 24 ballots cast in the precinct were lost and not counted by the recounting board. They present us with the following table to show the error of the trial court:

"Number of ballots printed .............. 700
Number of absentee ballots ............. 26

        Total ........................ 726
Number of Invalid absentee ballots ..... 3
Votes for Burridge ....................... 180
Votes for Wilson ......................... 314
Unused ballots ........................... 214
Invalid ballots .......................... 5
Blank ballots ............................ 6

        Total ....................... 722

Difference between total ballots and bal-
   lots in recount ................................ 4"

We shall ignore the fact that even according to the count of counsel for Wilson there was an error of some sort to the extent of four votes.

We may accept the testimony that 700 ballots were delivered to the judges and clerks of the election but the statement that 214 ballots were unused is incorrect. Counsel state in their brief that Mrs. French, a member of the recounting board, testified that 214 ballots were not used, but we are unable to find any such testimony, either on the part of Mrs. French or any other witness. As a matter of fact, a mathematical calculation shows the statement to be incorrect. In addition to the 700 ballots delivered to the judges and clerks of the election, there were 26 absentee ballots, making a total number of 726 ballots delivered at the election. Subtracting 529, the number of votes the poll books show were cast, from this number leaves 197 unused ballots instead of 214 as claimed by counsel for the defendant Wilson. Three of the persons who voted an absentee ballot were not entitled to vote in the municipal election. The recounting board found five invalid ballots and six blank ballots, a total of eleven. These eleven probably included the three invalid absentee ballots (if not, the net result would not be different). Taking these figures, the recapitulation should probably be as follows:

| | | |
|---|---|---|
| Total ballots given to the judges | | 726 |
| Ballots for Wilson | 314 | |
| Invalid and blank ballots | 11 | |
| Unused ballots | 197 | |
|      Total | 522 | |
| Ballots for Burridge | 193 | |
| Ballots not cast for either of the parties herein | 11 | |
|      Total | 726 | 726 |

The final count as nearly as we are able to figure in connection with the election of the councilman in question here appears to be as follows, accepting, to show the fairness in the result herein, the recount in the precincts other than the North Casper Precinct: The total number of votes cast for city councilman in the North Casper Precinct was 518. Of these, according to the recount, defendant Wilson received 314, leaving 204. Subtracting from this the eleven invalid and blank ballots found by the recounting board leaves 193 votes for Burridge. Adding these to the 1,002 votes received by him in the other precincts, according to the recount, makes a total of 1,195 votes cast in his favor, as against 1,189 for Wilson, whose votes are made up as follows: 875 votes received in precincts other than the North Casper Precinct, according to the recount, and 314 votes received in the North Casper Precinct.

It would seem to be elementary that in order that a recount of votes may prevail over the count by the clerks and judges of the election, it must appear that the same ballots and the same number of ballots were counted in the recount as were cast in the election. Thus it is said in 29 C.J.S. Elections § 290, p. 412: "Ordinarily, a recount can be had, and the result thereof accepted, only if the ballots and ballot box have been properly kept and not tampered with since the election." In the case of Rohde v. Steinmetz, 25 Colo. 308, 55 P. 814, 817, the court stated:

"* * * The court, upon recount, must be sure that it has before it the identical and unaltered ballots which were deposited by the voters, before they become controlling, as against the certificate of the result of the canvass of the election officers. Kingery v. Berry, 94 Ill. 515. * * *"

The court further stated at 55 P. 818:

"* * * The burden of proof was on the appellee to show noninterference with the ballots, and that upon re-

count they were the identical unaltered ballots deposited by the voters. * * "

In the case of Rottner v. Buchner, 260 Ill. 475, 103 N.E. 454, 455 the court stated:

" * * * the burden rests upon the contestant to show that the ballots are those cast at the election, and that they are in the same condition as when cast. Unless their preservation is shown to have been such that there has been no reasonable opportunity for tampering with them, they cannot overcome the returns. * * * "

In Sargent v. Newell, 368 Ill. 479, 14 N.E. 2d 654, 655, the court said:

"The rule is well established that in order for the recount of the ballots to overcome the returns of the election officials the contestant must prove that the ballots are those voted at the election and that they are in the same condition as they were when cast. The integrity of the ballots must be securely protected. In an election contest, it must be proved that they were so preserved that there was no reasonable opportunity for tampering with them. * * * "

In the case at bar there is ample evidence that the trial court was correct in finding that the integrity of the ballots was not maintained. The fact alone that only 505 ballots out of 529 were found and recounted impugns the integrity of the ballots to such an extent that the recount cannot prevail and we agree with the trial court that the plaintiff Burridge should be held to have been elected for the office here in question.

The judgment of the trial court accordingly must be and is affirmed.

Affirmed.