Argued December 10, reversed December 30, 1959

# AIKEN *v.* SHELL OIL CO. ET AL and HUEY
### 348 P. 2d 51

*William D. Campbell* argued the cause for appellant. On the briefs were Freed, Campbell & Hanlon, Portland.

*Nels Peterson* argued the cause for respondent. On the brief were Peterson, Pozzi & Lent, Portland.

Before McALLISTER, Chief Justice, and WARNER, SLOAN and KING, Justices.

KING, J., (Pro Tempore)

The plaintiff, James Glenn Aiken, brought this action for damages against Shell Oil Co., a corporation, O. L. Huey, Roy Johnson, Robert McKeown and Dan Milan, and charged them with negligently causing the plaintiff's arrest and confinement on the criminal charge of feloniously uttering and publishing a forged bank check.

A jury in the Multnomah county circuit court for Oregon returned a verdict for the plaintiff and against the defendants O. L. Huey and Roy Johnson in the amount of $5,250, and for the defendants Robert Mc-Keown and Dan Milan and against the plaintiff. The court had granted a nonsuit in favor of the Shell Oil

Co., a corporation. The defendant Roy Johnson moved for judgment n.o.v., and the court granted that motion, leaving the plaintiff with judgment against defendant O. L. Huey, who brings this appeal.

The principal questions are: Can a private citizen against whom a crime has been committed, and upon whose complaint the wrong person was arrested and later released, be required to respond in damages upon a complaint charging him merely with negligence, and does the complaint filed in this cause state facts sufficient for a good cause of action?

■ This appeal was brought up without a bill of exceptions and without a transcript of the testimony taken during the long trial in the lower court. Under those conditions this court will only review the sufficency of the pleadings and will not concern itself with the proceedings in the conduct of the trial and the various rulings made thereon.

This court in *Williams v. Ragan*, 174 Or 328, 333, 143 P2d 209, says:

"* * * a proper bill of exceptions is essential if a party appealing desires a review of rulings on evidence or on motion for nonsuit or directed verdict."

See *Wallowa Land Co. v. McGaffee*, 160 Or 298, 84 P2d 1116, and cases cited in the notes to § 5-703, OCLA; *Twin Falls Bank v. City Electric Co.*, 218 Or 542, 346 P2d 284.

"* * * The only question that can be considered is the sufficiency of the complaint, or some question that arises upon the pleadings in the case, where a bill of exceptions and transcript have not been filled." *Wallowa Land Co. v. McGaffee*, supra.

Under the above rule of law this court will consider only the pleadings and the sufficiency of the complaint

as raised by the demurrer of the defendant O. L. Huey in this case.

A brief statement of the facts as shown by the pleadings and as pointed out in the briefs will be given to understand better the background for the pleadings. It being understood, of course, that the facts as shown in the transcript of testimony are not before us, so our knowledge of the facts is quite limited and the authenticity thereof not verified by the transcript itself.

O. L. Huey operated a service station in Pendleton, Oregon, known as Huey's Service Station, which was leased to him by Shell Oil Co., a corporation.

On or about March 1, 1955, a person representing himself as James Aiken presented a check to Ivan Cullers, an employee of O. L. Huey, in the amount of $17.50, drawn on the Pendleton Branch of the First National Bank of Portland with James Aiken as payee and endorser and Carl Shillings as drawer. The bank refused to honor and pay the check because the drawer had no account there.

On March 15, 1955, Olen L. Huey went before the justice of the peace and swore to an information accusing James Aiken of the crime of knowingly uttering and publishing a forged bank check. Based on this information, the district attorney of Umatilla county, Oregon, moved that a warrant issue for the arrest of James Aiken, and warrant was issued and placed in the hands of defendant Roy Johnson, sheriff of Umatilla county, for service on and arrest of James Aiken.

By the usual proceedings, the police department in Portland, Oregon, was notified of the warrant and asked to check on and try to locate James Aiken.

The two defendants Robert McKeown and Dan Milan located James Glenn Aiken, the plaintiff herein, in the Providence Hospital, Portland, Oregon, and

placed him under surveillance and notified the sheriff of Umatilla county. On April 14, 1955, on the plaintiff's release from the hospital he was taken into custody by officers McKeown and Milan on the forgery warrant for James Aiken. He was held in the city jail in Portland, Oregon, for a few hours and then released on $1,000 bail.

On April 18, 1955, an indictment was returned by the Umatilla county grand jury against James Aiken, charging him with knowingly uttering and publishing a forged bank check, based on the check before mentioned. On or about April 21, 1955, the plaintiff, James Glenn Aiken, voluntarily journeyed to Pendleton to answer the charge. Ivan Cullers, who cashed the check, failed to identify him, and in fact swore he was not the man who cashed the check. He was then released and his bail exonerated.

Based on this state of facts, the plaintiff, James Glenn Aiken, filed his complaint in this case in words and figures as follows (omitting parts that apply to other defendants and showing only those parts that apply to O. L. Huey):

"\*   \*   \*   \*   \*.

### "III.

"That on or about March 15, 1955, at Pendleton, Oregon, defendant Shell Oil Company, and defendant O. L. Huey caused to be filed a certain complaint charging one James Aiken with a felony, to-wit, knowingly uttering and publishing a certain forged check; that thereafter and on or about March 15, 1955, this plaintiff was placed under surveillance by said defendants, and each of them, while he was confined at a hospital in Portland, Oregon; that on or about April 14, 1955, said defendants, and each of them caused this plaintiff to be taken into custody at Portland, Oregon, and he was arrested on said charge; that plaintiff was confined to the City Jail,

Portland, Oregon, by said defendants, and each of them, for approximately twelve hours; that plaintiff was required to post bail upon said charge in the sum of $1,000.00; that thereafter plaintiff was required to travel to Pendleton, Oregon to answer said charge; that on or about April 21, 1955, plaintiff was released from custody by said defendants, and each of them.

### "IV.

"That at and prior to the arrest and confinement of plaintiff as aforesaid, defendant Shell Oil Company, a corporation, and defendant O. L. Huey were wanton and negligent in one or more of the following particulars:

"1. In causing the arrest and the confinement of this plaintiff when the defendants knew, or in the exercise of reasonable care should have known, that this plaintiff was not the person guilty of said crime or any other criminal offense.

"2. In failing and neglecting to inspect plaintiff's photograph then on file with the City of Pendleton, Oregon, in connection with his prior service as a taxicab driver in said city, which the said defendants well knew.

"3. In failing and neglecting to compare the purported signature on that certain forged check with the signature of this plaintiff which was then and there available.

"4. In failing and neglecting to ascertain the whereabouts of this plaintiff upon the date and at the time of receipt of the forged check hereinabove referred to.

"* * * * *.

### "VII.

"That as a proximate result of the wanton and negligent conduct of said defendants, and each of them, plaintiff was caused to be arrested and confined to said City Jail in the City of Portland, Oregon, and to travel to Pendleton, Oregon, and to

appear upon such charge, from all of which plaintiff was caused to endure grievous mental pain and anguish, was caused to suffer aggravation of a pre-existing ulcer of his duodenum, and to endure physical pain and suffering by reason of his then physical condition, to suffer irreparable injury to his reputation, and all to his damage in the sum of $75,000.00.

"That plaintiff has been caused to incur special expenses in the sum of $100.00 for the cost of a bail bond and the approximate sum of $50.00 for traveling expenses from Portland, Oregon to Pendleton, Oregon, and return, and for meals and lodging, and to employ an attorney in the approximate sum of $100.00, which plaintiff claims as special damages herein."

Counsel for Shell Oil Co., counsel for Robert McKeown and Dan Milan, counsel for Roy Johnson, and counsel for O. L. Huey each filed motions to require plaintiff to elect on which theory he desired to proceed, on the claim that the allegations could be interpreted as a cause of action for negligence, abuse of process, false arrest, false imprisonment, and malicious prosecution. At the hearing on these motions plaintiff's counsel advised the court that the theory of plaintiff's case was based upon negligence; and prepared and submitted an order denying the motions, based on that admission of theory, which the court signed on December 22, 1955, and which is included in the judgment roll.

Thereafter the defendants all answered, except the defendant O. L. Huey who filed a demurrer as follows:

"Comes now defendant O. L. Huey and demurs to plaintiff's complaint herein on the ground and for the reason that it sets forth no cause of action as to this defendant.

"In support hereof defendant will rely at the argument of this motion upon the proposition that plaintiff's complaint fails to set forth a cause of

action against this defendant in that if the complaint attempts to state a complaint for false arrest or false imprisonment against this defendant, allegations essential to such causes of action are here missing; and that if the said complaint attempts to state a cause of action against this defendant for malicious prosecution, essential allegations of such cause of action are omitted from the complaint; and in that if the complaint attempts to state a cause of action based solely on alleged negligence on the part of this defendant, such action is not maintainable."

This demurrer was overruled by the court and order entered accordingly.

Defendant Huey then filed his answer, which was a general denial of the charges of negligence.

The plaintiff's theory, particularly as expressed in argument in this court, is that his case is based upon injuries caused by negligent imprisonment and arises under the common-law rule of trespass on the case.

The only Oregon case cited by the plaintiff to sustain his position in this regard is *Askay v. Maloney*, 85 Or 333, 166 P 29, and the decision on the second appeal in the same case in 92 Or 566, 179 P 899.

In that case the two defendants, Maloney and Swennes, were detectives in the city of Portland. W. Hines reported to the police department that two colored men had forcibly taken his watch and some money from him. Maloney and Swennes were sent by their supervisors to arrest the colored men. They did this and found the complainant's watch in the pocket of one of the prisoners. As they were being taken to the police station, one of the prisoners ran and he was fired on by both the detectives. One of the bullets accidentally struck Walter E. Askay in the neck, and he died as a result of the injury. Action for damages

for his death was brought against the detectives, charging negligence resulting from their shooting in a public place, even though they were attempting to make an arrest. It is difficult to see how that case in any way supports the plaintiff's position here. It had nothing to do with whether or not the parties being arrested would have any right of action against the complaining witness. The party instigating the arrests, Mr. Hines, was not even a party to the actions filed in behalf of the deceased.

Plaintiff also cites *Brown v. Kendall*, 60 Mass 292. In that case the defendant in stopping a dog fight between plaintiff and defendant's dogs, raised his stick and accidentally struck the plaintiff and injured him. The court merely held the plaintiff was required to establish a lack of due care on the part of defendant, and that plaintiff did not contribute to the injury. There was no question of imprisonment involved in the case.

*Shaw v. Lord*, 41 Okla 347, 137 P 885, also cited by the plaintiff, was another case of negligence in shooting another while making an arrest, which the court held was usually for the jury.

*Morris v. Platt*, 32 Conn 75 (1864), cited by the plaintiff, holds that it is well settled that a man is not liable in an action for trespass on the case for an unintentional consequential injury resulting from a lawful act, where neither negligence nor folly can be imputed to him. This was another case where an officer's pistol shots in his attempt to make an arrest injured another.

These are all the cases cited by the plaintiff to support his position taken in the complaint, of alleging and relying on negligence of the defendant in instigating the proceeding which caused the plaintiff's arrest and imprisonment. None of them sustains plaintiff's

position and none is based on facts similar to those in this case.

There is a line of authorities from early English cases and some in the United States that lend support to plaintiff's theory. *Wright v. Wilson*, 1 Ld Raymond 739, 91 Eng Rep 1394 (1699); *Holmes v. Blyler*, 80 Iowa 365, 45 NW 756 (1890); *West v. Cabell*, 153 US 78, 14 S Ct 752, 38 L ed 643 (1893). Then there are more recent cases, most involving banks' liability for negligently refusing payment on checks and thereby causing third parties to file criminal charges against the drawer. Among these are *Macrum v. Security Trust & Savings Co.*, 221 Ala 419, 129 So 74 (1930); *Collins v. City National Bank & Trust Co.*, 131 Conn 167, 38 A2d 582, 153 ALR 1030 (1944); *Mouse v. The Central Savings and Trust Co.*, 120 Ohio State 599, 167 NE 868 (1929); and *(Blue) Star Service, Inc. v. McCurdy*, 36 Tenn App 1, 251 SW2d 139 (1952).

This latter case arose out of McCurdy's arrest caused by the parking lot operator telling the officers that the car was stolen, even though the plaintiff had paid all charges due on it and it was properly released to him. It was more than mere negligence; it verged on willfulness.

22 Am Jur, False Imprisonment 374, § 33, after setting out that the decisions of the courts are not harmonious on the question of liability of the person at whose instance or on whose complaint an arrest is made, says:

"* * * On the other hand, since the person on whose complaint the arrest is made is usually a layman, not familiar with, and not pretending to determine, the legal procedure to be taken, it has been said to be unjust to hold him guilty of any tort, if he merely makes to a magistrate an honest statement of the facts as he claims them to be, and leaves it to the officers of the law to take such action

as they deem proper; and under such circumstances many courts have held him not liable."

See, also, *Rush v. Buckley*, 100 Maine 322, 61 A 774, 70 LRA 464, 4 Ann Cas 318; *Gifford v. Wiggins*, 50 Minn 401, 52 NW 904; *Smith v. Clark*, 37 Utah 116, 106 P 653, 26 LRA NS 953; *Langen v. Borkowski*, 188 Wis 277, 206 NW 181, 43 ALR 622.

In *Smith v. Clark*, supra, it is said:

"* * * The rule is founded upon public policy and is applicable alike to civil and criminal remedies and proceedings so that parties may be induced freely to resort to the courts and judicial officers for the enforcement of their rights and the remedy of their grievances without the risk of undue punishment for their own ignorance of the law, or for the errors of courts and judicial officers."

There are some cases where the officer has arrested a man different from the one named in the warrant, such as *West v. Cabell*, supra, and *Holmes v. Blyler*, supra, and the court held that the officers could not justify an abuse of process merely by showing that they acted in good faith, except in mitigation of damages. But in those cases the charges were against the officer serving the warrant for arresting a man not named in the warrant, and there were usually other aggravating circumstances. In the present case we are not concerned with the arresting officers, as they are not involved in this appeal and were exonerated by the jury. We are only concerned with the charges against a layman who asked for a warrant of arrest against one James Aiken, for whom he unquestionably cashed a forged check.

As pointed out before, there are no precedents cited from Oregon decisions to sustain the action against the defendant Huey based only on alleged negli-

gence, and we have found none directly in point in other jurisdictions.

*Springer v. Steiner*, 91 Or 100, 178 P 592, decided by this court in 1919, while not directly in point, gives some idea of what this court's thinking has been in false imprisonment cases on the question of alleged negligence of a physician in making an insanity examination, based on which the plaintiff was committed to the Oregon State Hospital. Later she sued the doctor, among others, and obtained judgment in the circuit court. This was reversed by the Supreme Court on the theory that a physician was not liable for false imprisonment by reason of negligence in the examination, so long as he acted in good faith and without malice in making his certificate. The court quotes at great length from *Niven v. Boland*, 177 Mass 11, 58 NE 282, 52 LRA 786.

We think a similar rule applies in this case. Our statutes, ORS 133.010 through ORS 133.170, provide the method of procuring and issuing a warrant of arrest.

ORS 133.040 provides:

"When complaint is made to a magistrate of the commission of a crime, the magistrate shall examine the informant on oath, reduce his statement to writing, cause the same to be subscribed by him and take the depositions of any witnesses that he produces in support thereof."

ORS 133.110 provides:

"If the magistrate is satisfied that the crime complained of has been committed and that there is probable cause to believe that the person charged has committed it, he shall issue a warrant of arrest."

It is readily seen from the above statutes that the magistrate, acting in his judicial capacity, not only

examines the complainant and extracts such information as he deems necessary, and then further, in his judicial capacity, evaluates that information or evidence and judicially determines whether a warrant should be issued; against whom and on what charge. Incidentally, under ORS 133.030 that magistrate might be a Supreme Court Justice, a circuit judge, county judge or justice of the peace, and in some instances municipal officers.

There is no judicial question and no duty placed upon the complaining witness, other than to place the facts before the magistrate as they are asked of him and to verify them under oath. The magistrate, with the advice of the district attorney, performs the judicial function. Likewise, the officer making the arrest must act in a quasi-judicial manner in determining whether the person arrested is the one named in the warrant. That is not the duty of the complaining witness.

■ We believe that there is no precedent under our many Oregon decisions involving either false imprisonment or malicious prosecution cases to sustain the complaint in this case as against the demurrer filed. A careful reading of the complaint shows it to be a blending of several different theories: false arrest, false imprisonment, malicious prosecution and negligence. Under this complaint the defendant is required to bear the onus of those terms and charges, while being limited in his defense to answering a charge of negligence, on which the plaintiff elected to rely.

There is further reason why this complaint is fatally defective as a negligence pleading when tested by demurrer.

■ One of the old and simple definitions of negligence is: "There must be a duty on the defendant; a

failure to perform that duty; and the failure to perform that duty must be the proximate cause of injury and damage to the plaintiff."

■ What negligence was alleged against this defendant? Paragraph IV, § 1, of the complaint merely sets out the conclusions of the pleader that the defendant knew, or in the exercise of reasonable care should have known, that the plaintiff was not the person guilty of said crime. Assuming that he did know or should have known, and assuming that sufficient was pleaded to get it further than the pleader's conclusion, still it is nowhere alleged that he failed or neglected to impart any information to the magistrate or the arresting officer as they requested, or otherwise. There is no duty alleged to rest upon the defendant in that regard and none is provided by statute.

Likewise under § 2 of said Paragraph IV of the complaint, defendant is alleged to be negligent in not hunting up and inspecting a photograph of plaintiff. There was no such duty on the defendant; and there again it is not even alleged that defendant was ever asked by the magistrate to identify the James Aiken named in the warrant or the James Glenn Aiken, plaintiff herein, nor any allegation that defendant did not actually furnish such information to either the magistrate, the arresting officer or both.

The same is true regarding § 3 of paragraph IV of the complaint. It was not the duty of the defendant Huey to assume the position of a handwriting expert and compare signatures for the magistrate; in fact, such testimony would not be competent nor of any value unless he was an expert. Again there is just the bold statement in the form of a conclusion that such a signature for comparison was available.

Section 4 of paragraph IV of the complaint goes further and would assume to require the defendant

Huey to ascertain the whereabouts of the plaintiff James Glenn Aiken before he asked for a forgery warrant for James Aiken, who, without contradiction, passed a worthless check at defendant's place of business. No such duty rested upon the defendant Huey.

We hold that the demurrer of defendant Huey to plaintiff's complaint should have been sustained and plaintiff's complaint dismissed, and it is so ordered.

Reversed.