Argued and submitted September 30, 1983, affirmed January 11, 1984

# BROWN,
## *Appellant,*

### *v.*

# FAR WEST FEDERAL SAVINGS
# AND LOAN ASSOCIATION et al,
## *Respondents.*

## (A8109-05799; CA A27176)

674 P2d 1183

David Shapiro, Portland, argued the cause for appellant. With him on the briefs was Colombo & Scanlon, P.C., Portland.

Carrell F. Bradley, Hillsboro, argued the cause and filed the brief for respondents.

Before Richardson, Presiding Judge, and Van Hoomissen, and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff seeks damages for injuries sustained when he was arrested in defendants' bank and advances three theories; battery, false imprisonment and negligence. He appeals a directed verdict entered in defendants' favor. We summarize the underlying facts in the light most favorable to plaintiff. *See James v. Carnation Co.,* 278 Or 65, 67, 562 P2d 1192 (1977).

Plaintiff had been a customer of the defendant savings and loan company for over thirty years. In late December, 1980, plaintiff, who was 80 years old, entered the main branch of defendant company for the purpose of withdrawing money from his savings account to purchase a certificate of deposit with a higher rate of interest. He completed a withdrawal form obtained from a supply of the forms located on a table in the bank lobby. He then went to the first available teller window, where he handed the withdrawal form to the teller. He was carrying a brown paper bag that he subsequently placed on the counter. Plaintiff did not look at the reverse side of the slip before handing the form to the teller. Plaintiff's personal account code was entered in the bank's computer, and an "all clear" signal was noted on the computer. When the teller turned the withdrawal form over, she found a note which read:

> "This is a holdup. Please do not cause any comotion [sic] or I will kill you. Deposit all your money to me. I have a gun with me and a bomb. Thank you."

The teller informed her supervisor, Bishop, of the note. Bishop, in turn, informed the branch manager, defendant Stone. Stone telephoned police and informed them of the contents of the note and provided a physical description of plaintiff. In the meantime, the teller returned to her teller window and gave plaintiff a bank check in the amount of the requested withdrawal. Plaintiff took the check and sat down on a bench next to the "new accounts" desk, where police arrested him a few minutes later. During the arrest, police pushed plaintiff down on the bench to handcuff him and broke his glasses. Inside plaintiff's brown paper sack, police found a can of pop.

Plaintiff subsequently filed this lawsuit. At the close of plaintiff's case-in-chief, the trial court concluded that

plaintiff had presented no evidence establishing that any employe of defendant bank instigated or participated in a battery of plaintiff or intended a touching of plaintiff's person and directed a verdict in defendants' favor on the battery claim. The court also directed a verdict on the negligence claim, relying on *Aiken v. Shell Oil Co. et al and Huey,* 219 Or 523, 348 P2d 51 (1959).[1]

The principal basis for plaintiff's battery claim is that the investigating police officers who physically touched him did so solely on the basis of the telephone call from defendant Stone. In essence, plaintiff asserts that Stone either intended or was reasonably certain that his telephone call would incite the police officers to restrain plaintiff physically.

To constitute battery, an act must be volitional, and the actor must have intended the resulting harmful or offensive contact. *Bakker v. Baza'r, Inc.,* 275 Or 245, 249, 551 P2d 1269 (1976). The force applied may be indirect and through an intervening agent, so long as it was an intentional act caused by the defendant. *Denton v. Arnstein,* 197 Or 28, 45, 250 P2d 407 (1952). Nothing in the record here establishes either that defendant Stone intended that police physically touch plaintiff or that Stone's telephone call caused the investigating officers to touch plaintiff.

Defendant Stone testified that when he telephoned police, he read the contents of the "holdup note" to the dispatcher and described plaintiff. He stayed on the telephone describing plaintiff's movements in the bank until police arrived to investigate. Stone testified that he asked only that police investigate the situation.

Nothing in the record suggests that the investigating officers were subject to the control of either Stone or the bank. In *Delp v. Zapp's Stores,* 238 Or 538, 547, 395 P2d 137 (1964), the Supreme Court held that when a private citizen merely lays the facts before a police officer and the officer, relying on his judgment and discretion, makes an arrest, the citizen is not liable for any resulting harm to the arrestee. Stone laid before the police dispatcher the facts he had at hand regarding an

---

[1] The trial court also directed a verdict in defendants' favor on the false imprisonment claim. However, because he does not argue it here, we conclude that plaintiff has abandoned his false imprisonment theory.

apparent bank robbery in progress. The officers who responded acted within their judgment and discretion in investigating the situation. Defendants, therefore, are not liable for the damage to plaintiff resulting from the application of force by police officers who were neither under their control nor agents of the bank.[2]

As an alternative theory, plaintiff argues that he introduced evidence that an employe of Far West encouraged police to commit a battery on plaintiff, citing *Paur v. Rose City Dodge,* 249 Or 385, 438 P2d 994 (1968), where the sales manager of an automobile dealership had directed a subordinate employe to "throw [the plaintiff] out." Plaintiff argues that under the rule of *Paur* some evidence that a bank employe encouraged police to touch him was adduced at trial and consequently, that plaintiff's battery claim should have been submitted to the jury. We disagree.

■ The evidence of encouragement of battery on which plaintiff relies is his testimony that, after police had handcuffed him, a man who plaintiff believed was a Far West security officer said to the police officers, "Why don't you take him in? Do you know him?" Assuming that plaintiff is correct in his conclusion that those statements constitute encouragement to the police, there are two reasons why this "encouragement" cannot support a battery claim. First, in *Paur,* the person who was directed to commit the battery was clearly subject to the control of the sales manager of the car dealership who issued the directive; here, by contrast, the investigating police officers were not subject to the control of either defendant. As in *Delp v. Zapp's Stores, supra,* their investigative actions resulted from their reliance on their personal judgment and discretion, as well as their training and experience.

Second, plaintiff testified that these remarks were made *after* police had handcuffed him and read him his constitutional rights. The act on which plaintiff predicates his battery claim resulted solely from the telephone call defendant Stone made to the police. The acts of the police officers,

---

[2] Moreover, plaintiff conceded at trial that the police officers who restrained him had acted reasonably under the circumstances of this case. *See Gigler v. City of Klamath Falls,* 21 Or App 753, 537 P2d 121, *rev den* (1975).

which plaintiff alleges constitute the battery, were complete when the alleged employe's statements were made. Consequently, even if plaintiff were correct in his contention that those remarks constitute "encouragement," the alleged statements were irrelevant to plaintiff's battery claim.

We agree with the trial court's conclusion that the evidence adduced by plaintiff at trial could not support a claim under any of plaintiff's alternative battery theories.

Plaintiff next argues that defendants were negligent because they did not investigate the circumstances surrounding the "bank robbery attempt" and because they did not accurately report to the police information known to each of the bank's employes. Plaintiff maintains that, because of his status as a customer of the bank, its employes owed him a duty to investigate further before requesting police assistance. He also argues that defendant Stone had a duty to report to police that plaintiff was a bank customer who had just withdrawn $11,000.

To state a cause of action in negligence, a plaintiff must allege that the defendants owed him a duty and breached that duty and that the breach was the cause in fact of some legally cognizable damage to plaintiff. *Brennen v. City of Eugene,* 285 Or 401, 405, 591 P2d 719 (1979). "Duty" is an expression of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection. 285 Or at 406. The question of whether a duty exists is a question of law to be determined by the court. *McDonald v. Title Insurance Co. of Oregon,* 49 Or App 1055, 1058-59, 621 P2d 654 (1980), *rev den* 290 Or 727 (1981). We find that, because of the public policy considerations involved here, the trial court correctly concluded that defendants did not owe plaintiff the duties he urges.

In *Aiken v. Shell Oil Co. et al and Huey, supra,* an employe of the defendant caused the plaintiff's erroneous arrest for the crime of uttering and publishing a forged check. The Supreme Court held that, when a crime has been committed against a private citizen, the citizen cannot be held liable for damages due to negligence in reporting the crime or instigating the arrest. The court concluded that the citizen owed no duty to plaintiff to investigate the circumstances, reasoning:

" "* * * The rule is founded upon public policy and is applicable alike to civil and criminal remedies and proceedings so that parties may be induced freely to resort to the courts and judicial officers for the enforcement of their rights and the remedy of their grievances without the risk of undue punishment for their own ignorance of the law, or for the errors of courts and judicial officers.' " 219 Or at 533, quoting from *Smith v. Clark,* 37 Utah 116, 106 P 653 (1910).

Interpreting, *inter alia,* the rule of *Aiken,* the court in *Shires v. Cobb,* 271 Or 769, 534 P2d 188 (1975), stated that "[i]t is the law in this state * * * that public policy will protect the victim of a crime who, in good faith and without malice, identifies another as the perpetrator of the crime, although that identification may, in fact, be mistaken." 271 Or at 772. *See also White v. Pacific Tel. & Tel. Co.,* 162 Or 270, 281, 90 P2d 193 (1939) (where the defendants acted erroneously, but in good faith, the law will protect them from damages under a malicious prosecution theory because it is sound public policy to encourage exposure of crime and punishment of criminals); Lacy, *Torts—1960 Oregon Survey,* 40 Or L Rev 278, 296 (1960-61).

Here, as in *Aiken* and *Shires,* public policy considerations preclude our imposition of a duty on bank employes to investigate further the apparent bank robbery in progress before calling police. The slight possibility of harm to innocent citizens resulting from an erroneous arrest is outweighed by the public policy of encouraging citizens to report criminal activity to the police.

For the same reasons, we also disagree with plaintiff's contention that the bank employes had a duty to report accurately to police each fact known by each employe under these emergency circumstances. To impose such a duty would have the effect of discouraging private citizens from reporting crimes in progress, thus hindering apprehension of criminals by police. As the court reasoned in *Aiken,* victims should be encouraged to report crime to the police freely without fear of the imposition of tort liability because of their errors or those of police officers. The trial court correctly concluded that defendants did not owe plaintiff a duty to investigate before calling police or to report accurately to police each factual detail known or observed by each bank employe.

Affirmed.