Argued and submitted December 19, 1996, reversed and remanded in part; otherwise affirmed June 25, 1997

Julie WALTHERS,
*Appellant,*

*v.*

Jessie W. GOSSETT,
*Defendant,*

*and*

Ralph F. FEAR, D.D.S., P.C.,
*Respondent.*

(CV 95-287; CA A92237)

941 P2d 575

David Slader argued the cause and filed the briefs for appellant.

Peter A. Ozanne argued the cause for respondent. With him on the brief were Daniel Knox, Gregory A. Zafiris and Schwabe, Williamson & Wyatt.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Plaintiff appeals from a judgment entered after the trial court granted defendant's motions for failure to state a claim, ORCP 21 A, and judgment on the pleadings. ORCP 21 B. We reverse.

Plaintiff alleges that as a teenager she was sexually abused by her orthodontist, who practiced as the sole officer and shareholder of a professional corporation. Another dentist has since purchased and renamed the corporation, and plaintiff now seeks damages from both the renamed corporation and her original orthodontist.

■ On review of a dismissal pursuant to ORCP 21 A, we treat the nonmoving party's factual allegations as true and accept all reasonable inferences in that party's favor. *Hansen v. Anderson*, 113 Or App 216, 218, 831 P2d 717 (1992). In her second amended complaint, plaintiff alleged the following: Defendant Jess W. Gossett was the sole officer and shareholder of "Jess W. Gossett, D.M.D., M.S., P.C.," a professional corporation through which Gossett practiced orthodontia. Between December 1976 and November 1978, while plaintiff was a minor and a patient of the corporation, Gossett sexually molested her during dental exams at the corporation's office by touching her breasts and genitals without her consent. In 1979, Dr. Fear purchased the corporation and renamed it "Ralph F. Fear, D.D.S., P.C." (defendant). Plaintiff does not allege any wrongdoing by Dr. Fear.

In August 1995, plaintiff filed an action for battery against Gossett.[1] In September 1995, she amended her complaint, joining defendant in the battery action under theories of direct and vicarious liability, and bringing a separate negligence claim based on defendant's failure to protect plaintiff and other patients from Gossett's abuse.

Under the theory of direct liability, plaintiff's complaint provides, in part:

"[The corporation] battered plaintiff by aiding and assisting Gossett's acts of sexual abuse as follows:

---

[1] Gossett is not a party to this appeal.

"a. [The corporation] allowed Gossett to remain in its employment and to conduct unsupervised dental examinations of plaintiff and other young girls despite the knowledge that Gossett would abuse plaintiff and others;

"b. [The corporation] provided Gossett with an examining room and equipment despite knowledge that Gossett used such space and equipment as a pretext to obtain access to plaintiff and to other young girls whom Gossett intended to molest; and

"c. [The corporation] made appointments for plaintiff and other young girls to be examined by Gossett despite knowledge that Gossett intended, or was likely, to molest plaintiff and others at such appointed time and place."[2]

Under its claim of vicarious liability, plaintiff alleged:

"The acts of sexual abuse occurred while plaintiff was a dental patient of [the corporation], took place at [the corporation's] dental office and occurred in the course of dental treatments at appointments that had been arranged by [the corporation]. The appointments had been arranged with [the corporation's] knowledge that Gossett would, or was likely to, use the opportunity of the appointment and the facilities of [the corporation] to abuse plaintiff.

"Gossett's acts were within the course and scope of his employment by [the corporation] and were incidental in time and place to his dental treatment of plaintiff on behalf of [the corporation]."

Under her negligence claim, plaintiff alleged:

"[The corporation] was negligent in one or both of the following particulars that caused the abuse of plaintiff:

"a. Prior to the abuse of plaintiff, [the corporation] knew that Gossett intended to sexually molest, had a practice of sexually molesting, and had an uncontrollable urge to sexually molest [the corporation's] minor female patients. [The corporation], nonetheless, took no steps to protect its patients from such abuse by either terminating

_____

[2] Plaintiff further alleged that:

"At all relevant times, Gossett was [the corporation's] sole shareholder and corporate officer and [the corporation] had full knowledge of all of Gossett's intentions, predilections and acts."

Gossett's employment, by supervising his treatment of [the corporation's] minor female patients, by notifying [the corporation's] minor female patients, or otherwise; and

"b. [The corporation] knew that Gossett was molesting plaintiff and took no steps to prevent repeated acts of abuse."

Defendant moved for dismissal of the battery action for failure to state a claim, ORCP 21 A, arguing that a corporation cannot be held directly liable for the intentional torts of its employees, and that it was not vicariously liable under the facts alleged by plaintiff. On the negligence claim, it moved for judgment on the pleadings, ORCP 21 B, arguing that the extended limitations period for child abuse claims in ORS 12.117 did not apply to negligence actions. The trial court granted both motions.

On appeal, plaintiff first assigns error to the dismissal of her battery claim under ORCP 21 A, which we review as a question of law. *Hansen*, 113 Or App at 218. We begin by addressing whether defendant could be held directly liable for "aiding and assisting" Gossett's acts of sexual abuse.

■ ■ "Battery" is defined as a voluntary act that is intended to cause the resulting harmful or offensive contact. *Bakker v. Baza'r, Inc.*, 275 Or 245, 249, 551 P2d 1269 (1976); *Brown v. Far West Federal*, 66 Or App 387, 390, 674 P2d 1183 (1984). To be liable for battery under an "aiding and assisting" theory, a defendant "must have participated in, aided, or procured the battery." *Paur v. Rose City Dodge*, 249 Or 385, 389, 438 P2d 994 (1968). Furthermore, the defendant must have acted with the requisite mental state—*i.e.*, it must have intended the "harmful or offensive contact," *Brown*, 66 Or App at 390, or at least understood "that a tort is being or will be committed by the other when he aids him," *Gymnastics USA v. McDougal*, 92 Or App 453, 458, 758 P2d 881, *rev den* 307 Or 77 (1988).

Defendant contends that a corporation cannot, as a matter of law, commit intentional torts such as battery. It reasons that a corporation can only act through its officers and employees, and Oregon courts have held corporations liable in tort only for employee acts committed in the course

and scope of employment—*i.e.*, under a theory of *vicarious* liability. *See, e.g., Chesterman v. Barmon*, 305 Or 439, 753 P2d 404 (1988). However, defendant does not explain why, as a matter of law or public policy, a corporation cannot be held *directly* liable for its employees' intentional torts.

Defendant's argument appears to rest on the notion that a corporation cannot *directly* engage in intentional tortious acts. However, under an "aiding and assisting" theory of battery, the corporation itself is not alleged to have committed the offensive or harmful contact. Rather, it is only alleged to have engaged in acts that *facilitated* another's torts, with the intent or knowledge that tortious conduct would occur.[3]

We acknowledge the inherent difficulty in applying such a theory to a closely held corporation owned and operated by a single individual. As defendant asserts, a corporation can act only through its agents, *Chesterman*, 305 Or at 445 (Peterson, C. J., concurring), and the corporation's sole agent in this case is Gossett, the tortfeasor whom the corporation is alleged to have assisted. The difficulty comes in sorting out which of Gossett's acts may be imputed to the corporation and which are entirely personal to Gossett himself. That difficulty, however, is not insurmountable.

The first question is whether the complaint states facts demonstrating that the corporation engaged in conduct that aided and assisted Gossett's sexual abuse. We conclude that it does. Plaintiff alleges that the corporation scheduled dental appointments for minor female patients, and that it furnished the examination room, facilities and equipment, providing Gossett with both his victims and the opportunity to molest them.

It is unclear whether Gossett himself, or another corporate employee, scheduled those appointments and provided the facilities.[4] However, even if it was Gossett, we have

---

[3] Plaintiff does not allege that the corporation sexually abused her, but rather that it aided Gossett's acts of sexual abuse by making dental appointments and luring plaintiff into the office and by providing dental facilities and equipment, knowing that Gossett intended to sexually molest plaintiff and other female patients.

[4] Although plaintiff alleged that Gossett was the corporation's sole officer and shareholder, she did not allege that he was the sole *employee*.

no difficulty in imputing that part of his conduct to the corporation, because those acts were clearly within the corporation's purpose of providing dental services.

The next question is whether the corporation aided Gossett with the requisite mental state—*i.e.*, with the intent of subjecting plaintiff to sexual abuse, *Brown*, 66 Or App at 390, or with the knowledge that such abuse was occurring or would occur, *Gymnastics USA*, 92 Or App at 458. Plaintiff alleges that defendant knew that Gossett intended, or was likely, to molest the corporation's patients during the scheduled examinations. Again, the problem is that Gossett was the sole corporate officer, and the corporation's knowledge must come from Gossett himself.

In *Bingham v. Lipman*, 40 Or 363, 67 P 98 (1901), the Oregon Supreme Court upheld the imposition of punitive damages against a corporation whose two sole officers and directors unlawfully detained an employee suspected of embezzlement. 40 Or at 371-72. The court reasoned that

> "there can be no room for controversy that where * * * the officers actually wielding the whole executive power of the corporation participated in and directed all that was planned and done, their malicious, wanton, or oppressive intent may be treated as the intent of the corporation itself, for which it is liable to answer in exemplary damages." *Id.* at 371-72.

Because Gossett was defendant's sole officer at the time the corporation scheduled plaintiff's appointments and provided the examination room, he wielded "the whole executive power of the corporation" and "participated in and directed all that was planned and done." Accordingly, his knowledge that he intended to molest plaintiff, or that he was likely to do so, may be imputed to the corporation under *Bingham*.

Defendant's attempt to cast *Bingham* as a case of *vicarious* liability is unpersuasive. Defendant appears to argue that a corporate officer's intent may be imputed to the corporation under *Bingham* only if that officer was acting in the course and scope of employment—*i.e.*, only if the corporation is vicariously liable. We disagree. *Bingham* addressed

whether a corporation could be held liable for punitive damages based on its officers' conduct and malicious intent. *Id.* at 371. The court did not, as defendant contends, resort to vicarious liability in imposing those damages. Instead, it imputed the controlling person/employees' intent to the corporation. *Id.*[5]

*Bingham*'s rationale was apparently based on *Lake Shore &c. Railway Co. v. Prentice*, 147 US 101, 114, 13 S Ct 261, 37 L Ed 97 (1893). There, the Court considered whether a railroad company could be subjected to punitive damages based on a conductor's false imprisonment of a passenger. In resolving that issue, the Court referred to its analysis in *Denver, &c., Railway v. Harris*, 122 US 597, 610, 7 S Ct 1286, 30 L Ed 1146 (1887):

> "In *Denver & Rio Grande Railway v. Harris*, the railroad company, as the record showed, by an armed force of several hundred men, acting as its agents and employes, and organized and commanded by its vice-president and assistant general manager, attacked with deadly weapons the agents and employes of another company in possession of a railroad, and forcibly drove them out, and in so doing fired upon and injured one of them, who thereupon brought an action against the corporation, and recovered a verdict and judgment under an instruction that the jury 'were not limited to compensatory damages, but could give punitive or exemplary damages, if it was found that the defendant acted with bad intent, and in pursuance of an unlawful purpose to forcibly take possession of the railway occupied by the other company, and in so doing shot the plaintiff.' This court, speaking by Mr. Justice Harlan, quoted and approved the rules laid down in *Quigley's case*, and affirmed the judgment, not because any evil intent on the part of the agents of the defendant corporation could of itself make the

---

[5] Since *Bingham v. Lipman*, 40 Or 363, 67 P 98 (1901), the law has evolved to the point that punitive damages may be imposed on a corporation without imputing employee intent. For example, in *Stroud v. Denny's Restaurant*, 271 Or 430, 532 P2d 790 (1975), the Oregon Supreme Court adopted a rule that a corporation will be liable for punitive damages when its employee's wrongful act subjects him personally to punitive damages and he committed that act within the scope of his employment. 271 Or at 437. That does not, however, mean that, when the tortfeasing employee wields the whole executive power of the corporation, that employee's intent may not be imputed to the corporation for other purposes, such as imposing direct liability.

corporation responsible for exemplary or punitive damages, but upon the single ground that the evidence clearly showed that the corporation, by its governing officers, participated in and directed all that was planned and done." *Lake Shore* at 113-14.

The *Lake Shore* Court described the applicable rule, as derived from *Denver*:

> "The president and general manager, or, in his absence, the vice-president in his place, actually wielding the whole executive power of the corporation, may well be treated as so far representing the corporation and identified with it, that any wanton, malicious or oppressive intent of his, in doing wrongful acts in behalf of the corporation to the injury of others, may be treated as the intent of the corporation itself. But the conductor of a train, or other subordinate agent or servant of a railroad corporation, occupies a very different position, and is no more identified with his principal, so as to affect the latter with his own unlawful and criminal intent, than any agent or servant standing in a corresponding relation to natural persons carrying on a manufactory, a mine, or a house of trade or commerce." *Id.* at 114.[6]

Applying that rule, the Court concluded that, although the defendant railroad could be vicariously liable for the conductor's false imprisonment of the passenger, it could not be liable for punitive damages because the conductor was not a controlling officer and his malicious intent therefore could not be imputed to the corporation. *Id.* at 114-17.

■ *Lake Shore*'s analysis of *Denver*, and *Bingham*'s replication of that analysis, thus establishes that a corporation can be directly liable for intentional torts where: (1) the tort is committed by a person or persons wielding "the whole executive power of the corporation"; and (2) the tortious acts were committed "in behalf of the corporation." *See, e.g., Bingham*, 40 Or at 365 (act of unlawfully detaining employee suspected of embezzlement was arguably committed on corporation's

---

[6] Although *Bingham* does not explicitly cite *Lake Shore &c. Railway Co. v. Prentice*, 147 US 101, 13 S Ct 261, 37 L Ed 97 (1893), the language from *Bingham*, quoted above, is nearly identical to *Lake Shore*'s language. *Bingham* does cite *Denver, &c., Railway v. Harris*, 122 US 597, 7 S Ct 1286, 30 L Ed 1146 (1887). 40 Or at 372.

behalf); *Denver*, 122 US at 605-06 (violently taking possession of competing railroad was arguably on corporation's behalf).

■ Here, Gossett wielded the corporation's whole executive power. However, defendant asserts, the pleadings do not show that Gossett's acts were "on behalf of the corporation." We agree.

Plaintiff's complaint does not allege that a corporate purpose, much less a principal purpose, of "Jess W. Gossett, D.M.D., M.S., P.C." was the facilitation or commission of sex abuse. Rather, the complaint describes the corporation as one "conducting the business and profession of providing orthodontia treatment." Thus, even if plaintiff could prove that the corporation was used as a front for child abuse, the complaint fails to allege facts demonstrating that that abuse was on behalf of the corporation, rather than Gossett individually. The only possible "benefit" was to Gossett himself, in the form of sexual gratification; there was no corresponding benefit to the corporation. Consequently, the trial court did not err in dismissing the "aiding and assisting" claim.[7]

■ We next address whether defendant could be held vicariously liable for Gossett's sexual misconduct. Unlike a theory of "aiding and assisting," a corporation need not be at fault to be vicariously liable for its employees' tortious acts, as long as those acts were committed in the scope of employment. *Chesterman*, 305 Or at 442. An employee acts within the scope of employment when

> "(1) * * * the act occurred substantially within the time and space limits authorized by the employment; (2) * * * the employee was motivated, at least partially, by a purpose to serve the employer; and (3) * * * the act is of a kind which the employee was hired to perform." *Id.*

■ Whether an employee's tortious conduct was within the scope of employment is typically a jury question. *Lourim v. Swensen*, 147 Or App 425, 433, 936 P2d 1011 (1997), *citing Stanfield v. Laccoarce*, 284 Or 651, 655, 588 P2d 1271 (1978).

---

[7] We do not foreclose the possibility that, in an appropriate case, pleadings could sufficiently allege that controlling persons engaged in wrongful conduct to further some corporate purpose, either benign or illicit. That is not the case here.

However, when the employee's conduct is so clearly outside the scope of employment, a court may resolve the issue as a matter of law. *Id.*

■ The complaint here alleges that Gossett abused plaintiff while administering orthodontia treatment in the corporation's office, during appointments the corporation had arranged. That satisfies the first prong of *Chesterman.* Defendant contends that plaintiff cannot satisfy the second and third requirements, because Gossett's sexual abuse could not have been motivated by an intent to serve the corporation, nor was fondling a patient the type of act he was hired to perform.

For the same reasons that were dispositive with respect to plaintiff's "aiding and assisting" claim, we conclude that plaintiff's allegations with respect to vicarious liability do not satisfy the third prong of *Chesterman*. As noted, plaintiff's complaint describes the corporation as one "conducting the business and profession of providing orthodontia treatment." Acts of sexual abuse are not acts that employees of a corporation "providing orthodontia treatment" are hired to perform. Plaintiff does, however, allege that "Gossett's acts were within the course and scope of his employment." That kind of bald legal conclusion is not sufficient to provide a factual predicate about either the purpose of the corporation or the nature of the acts the employees of the corporation are hired to perform. The trial court did not err in dismissing plaintiff's claim based on vicarious liability.

■ Plaintiff alternatively argues that Gossett acted within the scope of his employment because his sexual misconduct was incidental to an authorized dental procedure, the latter of which satisfies *Chesterman*'s second and third requirements. We disagree. Authorized dental procedures typically involve contact with the patient's mouth, not her breasts or genitals. We fail to see how the latter type of touching was incidental to Gossett's legitimate duties.[8]

---

[8] *Citing Erickson v. Christenson*, 99 Or App 104, 781 P2d 383 (1989), *appeal dismissed* 311 Or 266 (1991), plaintiff also argues that Gossett acted within the scope of employment because he abused his position as plaintiff's orthodontist to abuse her sexually. For the reasons stated in *Lourim v. Swensen*, 147 Or App 425, 437-38, 936 P2d 1011 (1997), plaintiff's reliance on *Erickson* is misplaced.

We conclude that the complaint does not allege facts indicating that Gossett's sexual misconduct was within the scope of his employment. The trial court therefore properly dismissed plaintiff's vicarious liability claim.[9]

We next address whether the extended limitations period for child abuse claims applies to plaintiff's negligence action. ORS 12.117.[10] Defendant below argued that it did not, and moved for judgment on the pleadings on that claim. The trial court agreed.

In *Lourim*, we held that ORS 12.117 applies to negligence actions based on allegations that the defendant actually knew of the child abuse and allowed, permitted or encouraged it to continue. 147 Or App at 440, 444; *see also Fearing v. Bucher*, 147 Or App 446, 454, 936 P2d 1023 (1997); *Sipes v. Sipes*, 147 Or App 462, 467, 936 P2d 1027 (1997).

■ Plaintiff here alleges that defendant was negligent in failing to protect plaintiff and other patients from Gossett's abuse, when defendant "knew that Gossett intended to sexually molest, had a practice of sexually molesting, and had an uncontrollable urge to sexually molest [the corporation's] minor female patients." Plaintiff has sufficiently alleged that defendant had actual knowledge of Gossett's abuse and that it allowed or permitted it to continue. ORS 12.117 therefore applies, and the trial court erred in dismissing the negligence action.

Reversed and remanded on negligence claim; otherwise affirmed.

---

[9] Because we affirm on this basis, we do not decide whether the extended limitations period of ORS 12.117 applies to vicarious liability claims.

[10] ORS 12.117(1) provides:

"Notwithstanding ORS 12.110, 12.115 or 12.160, an action based on conduct that constitutes child abuse or conduct knowingly allowing, permitting or encouraging child abuse accruing while the person who is entitled to bring the action is under 18 years of age shall be commenced not more than six years after that person attains 18 years of age, or if the injured person has not discovered the injury or the causal connection between the injury and the child abuse, nor in the exercise of reasonable care should have discovered the injury or the causal connection between the injury and the child abuse, not more than three years from the date the injured person discovers or in the exercise of reasonable care should have discovered the injury or the causal connection between the child abuse and the injury, whichever period is longer."