Carroll C. KNUTSEN,
*Respondent,*

*v.*

Maryalyce SAGER,
*Appellant.*

(93CV2856CC; CA A85091)

894 P2d 1204

J. Michael Alexander argued the cause for appellant. With him on the briefs was Burt, Swanson, Lathen, Alexander, McCann & Smith, P.C.

Terrence Hammons argued the cause for respondent. With him on the brief was Hammons, Mills & Spickerman.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

■     Defendant appeals an order denying her motion for relief from a judgment against her. ORCP 71 B(1). She argues that because she was ill, unrepresented by legal counsel, and out of the state for a substantial period of time, the judgment should have been set aside. We review for an abuse of discretion, *Auble and Auble*, 125 Or App 554, 559, 866 P2d 1239 (1993), *rev den* 318 Or 478 (1994), and affirm.

Plaintiff brought this action against defendant to impose a constructive trust on certain parcels of real property owned by plaintiff and defendant, to quiet title to those parcels in plaintiff, and/or for a declaration that defendant has no interest in them. He alleges that he and defendant had a personal relationship and that defendant misrepresented to him during that relationship that plaintiff's ex-wife could assert an interest in properties he purchased after the final judgment was entered dissolving his marriage. He asserts that defendant induced him to include her name on the title to the real property he purchased to prevent his ex-wife from claiming an interest, that she initially agreed to remove her name from the title on his request, but later she refused to do so. Defendant, through counsel, filed an answer to plaintiff's complaint, denying the allegations.

Subsequently, on January 24, 1994, defendant's attorney filed a motion withdrawing as her counsel, which was granted by the court on the same day. On February 1, 1994, plaintiff filed a motion for summary judgment and served a copy of the motion on defendant by mailing it to her address in Waldport. ORCP 9. Defendant did not respond, and on March 17, 1994, the trial court granted the motion for summary judgment and entered judgment against defendant. Although service of the motion was proper, defendant did not become aware of the motion and the judgment until March 23. On April 1, 1994, defendant moved *pro se* for relief from the judgment. After the hearing on defendant's motion, the trial court denied it, and this appeal followed.

On appeal, defendant asserts that the trial court abused its discretion in denying her motion, and that pursuant to ORCP 71 B, she should have been granted relief from the judgment. ORCP 71 B provides, in part:

"(1) On motion and upon such terms as are just, the court may relieve a party or such party's legal representative from a judgment for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect * * *."

Defendant admits that she was aware her attorney had withdrawn as her counsel, but says that the attorney told her that nothing was pending regarding the case. She argues that, under her particular circumstances, her neglect in responding to the summary judgment motion was "excusable." In her motion, she explains:

"I was under doctor care from Jan 10, 1994 and am still. I am off medication for a ruptured disc and two hern[iated] discs. I was on pain medication and left Oregon aprox Jan 15-17, 1994. I didn't return from spinal clinic in Calif until March 23-24, 1994. My mail was all held at the Waldport, Or. Post office. This request is in accordance with ORCP 71B — Mistakes; Inadvertence; Excusable Neglect; Newly discovered evidence."

At the hearing on her motion, defendant produced notes from her physician in Newport for appointments that occurred on February 3, 7, and 11, 1994.[1] The notes confirm that on February 3, she visited her doctor in Newport. On February 4, she went to Providence Hospital in Portland, and on February 7 and 11, she again saw her doctor in Lincoln City. The notes from February 7 provide the following information regarding her medical condition:

"This patient returns to the office for follow-up. I initially saw her on 2/3/94 in Newport, and then she went over to Providence Hospital on 2/4/94 for a lumbar MRI study. She didn't want to wait to have this done in Newport, or have it done in Corvallis. She brought in copies of this MRI so I could review them today.

"These studies reveal a far lateral disk herniation at L5/S1 on the right, which is affecting the right L5 nerve root ganglion. The patient's radicular pain in the right leg is episodic. If she stands with her knee and hip flexed some, she is relatively pain free; but then the moment she tries to start walking, she just has agonizing pain down the right leg. She is not sleeping well. She is not happy with this pain that at times is almost unbearable."

---

[1] The trial court file does not contain the notes nor were they introduced as exhibits. However, the transcript of the hearing indicates that the trial court reviewed them, and they appear in defendant's brief.

Although the notes reflect that defendant was in Oregon in early February 1994, defendant stated[2] at the hearing that she was out of Oregon from about January 24 until about March 22 or 24, and that she never came back to Oregon during that period. Later in the hearing, the court questioned her regarding the dates of her visits with the doctor:

"THE COURT:  * * * So obviously you were here on [February 3]. You weren't in California.

"[DEFENDANT]:   Not on February 3rd, no. No, my — one of the bills that I got, not the bill but one of the notices I got from St. Francis Hospital in San Francisco says 'date of first service February 24th.'

"THE COURT:   Where were you before then? You were up here on February 24th.

"[DEFENDANT]:   No, I wasn't here until February 24th. When I can sit down and drive good, it's a day's drive down there and it took me a few days to get down there 'cause I'd stop and rest * * *."

Also, defendant told the court that she lived in Yachats, but kept a post office box about 12 miles away at the Waldport post office. She said that her mail accumulated in the post office box for at least a six-week period because she said she was under too much pain to drive to the post office or because she was in California. However, she admitted to the court that she was able to drive herself to California during this time period. She justified the failure to pick up her mail because she is a "loner" and because "I don't have anybody that I associate with."

We have said that ORCP 71 B should be construed liberally "to the end that the rights of litigants shall be determined on the merits of the controversy." *Morrell v. Lane County*, 35 Or App 793, 796, 582 P2d 847 (1978). Nevertheless, in order for the court to grant relief to a party, the party must produce credible evidence that the judgment was taken because of mistake, inadvertence, surprise or excusable neglect. *Id.* at 796. Furthermore, it is the trial

---

[2] Although the trial court did not permit sworn testimony at the hearing, it allowed defendant to explain on the record why she failed to respond to the summary judgment motion.

court's decision in the first instance to determine if the failure to appear was excusable, and "[a]n appellate court will not reverse such a determination unless it concludes that such a determination is unreasonable." *Hiatt v. Congoleum Industries*, 279 Or 569, 576, 569 P2d 567 (1977).

In *Gutzman and Gutzman*, 25 Or App 199, 548 P2d 993 (1976), we upheld a trial court's denial of the husband's motion to set aside a judgment. In that case, the husband made frequent business trips out of town. While he was on business in British Columbia, his attorney wrote him three different times to notify him of a change of trial date. Meanwhile, the husband suffered a heart attack in British Columbia, and told the wife in a telephone conversation that he would be discharged on April 7, two days before the trial was to take place. The husband did not contact his attorney until April 11, and in June, he moved to set aside the decree. He further admitted that he had not picked up his mail for three or four months. In affirming the trial court's denial of the husband's motion, we said about the husband

> "who knew of the dissolution proceeding, [that he] had the responsibility to keep in touch with his attorney or to be available to receive mail from him." *Id.* at 203.

Arguably, defendant's actions are more inexcusable than the husband's in *Gutzman*. She knew her attorney had withdrawn as counsel, and she knew that she was solely responsible for maintaining contact with the court regarding the status of the case. Despite that knowledge, she made no effort to pick up her mail for at least six weeks. The trial court's apparent rejection of her argument that the pain was so excruciating that she could not drive the 10 or 12 miles to pick up her mail is reasonable in the light of the fact that the pain did not prevent her from driving to California, or prevent her from making trips to Newport, Lincoln City and Portland. It is not clear whether other people took her to the doctor and to the Portland hospital. However, if that is the case, then the trial court was entitled to disbelieve her statement that she had no one who could pick up her mail for her at the post office. It is clear from the facts that had she checked her mail box before she left for California sometime after February 11, she would have become aware of the summary judgment motion.

Defendant argues that *Gutzman* is inapposite, because in that case, the husband did not move promptly to set aside the judgment. However, even if defendant acted promptly to vacate the judgment, her action does not remedy her inexcusable neglect in allowing the judgment to be entered. In the light of these facts, we conclude that the trial court did not abuse its discretion in denying defendant's motion for relief from the judgment on the basis of mistake, inadvertence, surprise or excusable neglect.

Affirmed.