Argued and submitted July 19, affirmed September 27, 2006

# LABOR READY NORTHWEST, INC.,
*Petitioner,*

*v.*

# BUREAU OF LABOR AND INDUSTRIES,
*Respondent.*

## 122-01, 149-01; A118474

145 P3d 232

See also, 188 Or App 346, 71 P3d 559.

David J. Sweeney argued the cause for petitioner. With him on the briefs were Paul G. Dodds and Brownstein, Rask, Sweeney, Kerr, Grim, DeSylvia & Hay, LLP.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Linder, Judge.*

HASELTON, P. J.

___

* Linder, J., *vice* Ceniceros, S. J.

## HASELTON, P. J.

Petitioner, Labor Ready Northwest, Inc., seeks judicial review of an amended final order of the Bureau of Labor and Industries (BOLI) that determined that petitioner had violated prevailing wage laws and placed petitioner on the list of those ineligible to receive contracts or subcontracts for public works for a one-year period.[1] *Former* ORS 279.361(1) (2001), *repealed by* Or Laws 2003, ch 794, § 332. Reviewing for errors of law and substantial evidence, ORS 183.482(8)(a), (c), we conclude that BOLI did not err in determining that petitioner "intentionally" failed to pay the prevailing wage rate to one of its workers. Further, we conclude, under ORS 183.482(8)(b), that BOLI did not "abuse its discretion" in debarring petitioner from public works for a period of one year. Accordingly, we affirm.

As found by BOLI in its order, the material facts are as follows. Petitioner is in the business of providing temporary workers to other client businesses. I-5 Excavating, Inc. (I-5), the primary contractor on a public works project referred to as the "Cornelius project," contacted petitioner to supply temporary employees.[2] Petitioner supplied I-5 with a group of general laborers and carpenters from June 12 until August 12, 2000.

Initially, petitioner was unaware that the project was a public works project subject to prevailing wage rate laws. However, on July 6, 2000, petitioner learned that the Cornelius project was a public works project and that, consequently, it had been underpaying the workers. Under the prevailing wage rate, "laborers" were to be paid $27.59 per hour, and "carpenters" were to be paid $31.86 per hour. However, petitioner had been paying the laborers and carpenters wages ranging from $6.50 to $10.00 per hour. Petitioner's branch manager, Shannon Shields, immediately went to the

---

[1] BOLI also assessed civil penalties against petitioner, *former* ORS 279.370 (2001), *repealed by* Or Laws 2003, ch 794, § 332; however, petitioner does not appeal those portions of the order.

[2] BOLI's final order was concerned with petitioner's conduct on other projects as well; however, petitioner does not seek review of BOLI's decision regarding those violations.

work site and gave the foreman a copy of the prevailing wage rate information to be posted on site. Shields did not see the foreman post the information and did not go back to the site to ensure its continued posting.

From July 6 until the end of the project, petitioner, with one notable exception discussed below, paid the laborers and carpenters the prevailing wage rates of $27.59 and $31.86, respectively. In addition, petitioner paid "back wages" for the period of underpayment.

Despite those efforts, on December 4, 2000, BOLI contacted petitioner, asserting that it had underpaid eight employees and that it needed to pay additional back wages to make up the differences. Petitioner reviewed its records and realized that one carpenter, Chris Francis, had been paid only $31.26, as opposed to $31.86, for his work after July 6. Francis worked 57.5 hours at that rate creating a total deficiency of $34.50. Petitioner exchanged a series of letters with a BOLI investigator. Petitioner admitted the $34.50 deficiency but denied any underpayment with respect to the other seven employees. After reviewing the documentation that petitioner provided, BOLI agreed that Francis was the only worker for which a deficiency still existed. Consequently, BOLI dismissed its accusations regarding the other seven workers but never dismissed its demand regarding Francis. As of January 2002 (over a year later), petitioner had not paid the additional back wages to Francis.

BOLI initiated these proceedings alleging, among other things, that petitioner had intentionally failed to pay back wages owed to Francis and that petitioner had intentionally failed to post and keep posted the prevailing wage rates at the job site, *former* ORS 279.350, *repealed by* Or Laws 2003, ch 794, § 322. In its order, BOLI concluded that petitioner had intentionally failed to pay back wages to Francis and that it had intentionally failed to post and keep posted the prevailing wage rates at the job site. BOLI concluded, based on those findings, that debarment was required. After considering various aggravating and mitigating circumstances, including petitioner's prior misconduct and the other charges of misconduct in these proceedings,

BOLI imposed a one-year debarment as a penalty. BOLI concluded:

"[O]ne year is an appropriate period of debarment based on [petitioner's] intentional failure to pay the prevailing rate of wage to one worker employed on the Cornelius Project. One year is also an appropriate period of debarment based on [petitioner's] intentional failure to post the prevailing wage rates * * * on the Cornelius Project. [BOLI] would impose the same one-year debarment for either violation independently but chooses, in its discretion, to run the two one-year debarment periods concurrently rather than consecutively."

Petitioner seeks review. Petitioner's first and second assignments of error challenge BOLI's determinations that (1) petitioner intentionally failed to pay Francis the prevailing wage rates and (2) petitioner intentionally failed to post and keep posted the prevailing wage rates at the job site. Petitioner's third assignment of error challenges the imposition of a one-year debarment as being based on inapposite criteria and, in all events, as excessive.

*Former* ORS 279.361(1) provided:

"When [BOLI] * * * determines that a contractor or subcontractor has intentionally failed or refused to pay the prevailing rate of wage to workers employed upon public works * * * or a contractor or subcontractor has intentionally failed or refused to post the prevailing wage rates as required by ORS 279.350(4), the contractor [or] subcontractor * * * shall be ineligible for a period not to exceed three years from the date of publication of the name of the contractor or subcontractor on the ineligible list as provided in this section to receive any contract or subcontract for public works."[3]

In *Labor Ready Northwest, Inc. v. BOLI*, 188 Or App 346, 359-60, 71 P3d 559 (2003), *rev den*, 336 Or 534 (2004) (*Labor Ready I*), we concluded that "intent" within the meaning of that statute means "conscious choice" or "design or purpose."[4]

---

[3] The substance of *former* ORS 279.361 is now found at ORS 279C.860.

[4] *Labor Ready I* involved allegations of similar violations against the same employer on a different project.

As noted, BOLI chose to impose a one-year period of debarment based on either of two independent grounds, *viz.*, intentional failure to pay or intentional failure to post. Thus, if BOLI did not err with regard to one of those grounds, we need not address the other. For the reasons that follow, we conclude that (1) BOLI did not err in determining that petitioner, by virtue of its nonpayment after December 2000 of the $34.50 owing to Francis, had intentionally failed to pay the prevailing wage rate and (2) BOLI did not err in imposing a one-year debarment based on that violation after considering aggravating and mitigating circumstances. Accordingly, we do not address petitioner's challenge to the "failure to post" determination and to the imposition of debarment on that alternative basis.

■ In petitioner's first assignment of error, it challenges the legal and factual grounds upon which BOLI concluded that petitioner intentionally failed to pay Francis the prevailing wage rate owed. We review BOLI's legal conclusions for errors of law, ORS 183.482(8)(a), and its factual findings for substantial evidence, ORS 183.482(8)(c).

Extended discussion is unwarranted. Suffice it to say that BOLI's legal interpretation of the term "intentionally" in *former* ORS 279.361(1) was not erroneous. It was consistent with our interpretation of that term in *Labor Ready I*. In addition, we have reviewed the record and conclude that substantial evidence supports BOLI's factual determination that petitioner acted intentionally when it did not pay the additional wages owed to Francis.[5]

---

[5] Petitioner offered testimony that it had been prepared to pay Francis the amount of the underpayment—and, in fact, had prepared a check—but had not done so at the instance of BOLI's investigator. BOLI, however, rejected that testimony on the ground that it was not credible. In reviewing that determination, the standard is not what this court would have found *de novo*, but, instead, whether BOLI's determination comported with substantial evidence, ORS 183.482(7) ("[T]he court shall not substitute its judgment for that of the agency as to any issue of fact or agency discretion.")—and we conclude that it did. *See, e.g., Smith v. Real Estate Agency*, 148 Or App 62, 68, 939 P2d 77 (1997) (although the petitioner was correct in pointing out the lack of direct evidence supporting the agency's factual finding, the agency was entitled to infer facts from the evidence in the record, and, under ORS 183.482(7), this court would not substitute its judgment for that of the agency).

■    We turn, then, to petitioner's third assignment of error, which challenges the imposition of a one-year period of debarment. As noted, *former* ORS 279.361(1) mandated that, upon a finding of "intentional" misconduct, BOLI *"shall"* make the subcontractor "ineligible for a period not to exceed three years * * *." (Emphasis added.) Thus, upon finding that petitioner had acted "intentionally," BOLI was *required* to debar petitioner for *some* period of time. BOLI's only discretion pertained to the *length* of the debarment.

■■    Petitioner urges us to review BOLI's decision for an "abuse of discretion." In that regard, the scope of our review is circumscribed by ORS 183.482, which provides, in part:

"(7)    * * * [T]he court shall not substitute its judgment for that of the agency as to any issue of fact or agency discretion. * * *

"* * * * *

"[(8)](b)    The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A)    Outside the range of discretion delegated to the agency by law;

"(B)    Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C)    Otherwise in violation of a constitutional or statutory provision."

Although litigants—and this court—commonly characterize our review pursuant to ORS 183.482(8) as being for "abuse of discretion," that term, however convenient, is imprecise and arguably misleading. In *Price v. Board of Parole*, 301 Or 393, 398, 723 P2d 314 (1986), the court observed:

"According to the petitioner, the phrase 'abuse of discretion' is simply a shorthand method of stating that the Board exercised its discretion in one or more of the ways proscribed by ORS 183.482(8). In light of the legislature's clear intent to limit the court's scope of review to that defined in ORS 183.482(8), we decline to accept this loosely-termed phrase as properly setting forth a basis for reversal or remand."

In all events, and however properly labeled, our authority to remand under ORS 183.482(8) is limited to three circumstances:

> "An agency abuses its discretion when its action is (1) outside the range of discretion delegated to the agency by law; (2) inconsistent with an agency rule or an officially stated agency position; or (3) otherwise in violation of a constitutional or statutory provision."

*Arlington Ed. Assn. v. Arlington Sch. Dist. No. 3*, 177 Or App 658, 663, 34 P3d 1197 (2001), *rev den*, 333 Or 399 (2002) (citing ORS 183.482).

We return to petitioner's arguments. Petitioner does not invoke any "agency rule," "officially stated agency position," or "prior agency practice" that is inconsistent with the imposition of a one-year debarment in this case. ORS 183.482(8)(b)(B). Nor does petitioner contend—at least in any cognizable fashion—that BOLI's imposition of a one-year debarment violated a "constitutional or statutory provision."[6] ORS 183.482(8)(b)(C). Thus, the inquiry reduces to whether BOLI's exercise of discretion in this case was "[o]utside the range of discretion" delegated by *former* ORS 279.361(1). ORS 183.482(8)(b)(A).

Petitioner's argument concerning BOLI's "range of discretion" is twofold. First, petitioner argues that BOLI erred in considering aggravating factors when determining the proper length of debarment. Second, petitioner argues that, in all events, the one-year length is "excessive" in this case. Neither argument is availing.

Although *former* ORS 279.361(1) authorized BOLI to impose debarment for up to three years, no statute or administrative rule prescribes criteria circumscribing or guiding that discretion. BOLI, through its own decisions,[7] has elected to look to a variety of aggravating and mitigating factors, including the factors from *former* OAR 839-016-0520

---

[6] Petitioner's generic reference to "basic principles of fairness" is insufficient in that regard.

[7] *See, e.g., In the Matter of Keith Testerman*, 20 BOLI 112, 129 (2000).

(2003), *renumbered as* OAR 839-025-0520 (2006), in determining an appropriate term of debarment. *Former* OAR 839-016-0520, by its terms, specifies factors that BOLI must consider when determining the amount of a discretionary civil penalty:

"(1) The commissioner shall consider the following mitigating and aggravating circumstances when determining the amount of any civil penalty to be assessed against a contractor, subcontractor or contracting agency and shall cite those the commissioner finds to be applicable:

"(a) The actions of the contractor, subcontractor or contracting agency in responding to previous violations of statutes and rules;

"(b) Prior violations, if any, of statutes and rules;

"(c) The opportunity and degree of difficulty to comply;

"(d) The magnitude and seriousness of the violation;

"(e) Whether the contractor, subcontractor or contracting agency knew or should have known of the violation.

"* * * * *

"(4) Notwithstanding any other section of this rule, the commissioner shall consider all mitigating circumstances presented by the contractor, subcontractor or contracting agency for the purpose of reducing the amount of the civil penalty to be assessed."

Given the fact that no statute or rule prescribes criteria for determining a proper period of debarment, BOLI did not abuse its discretion in referring to *former* OAR 839-016-0520 as a useful and analogous guide in exercising its discretion. *See Gambee v. Dept. of Forestry*, 191 Or App 241, 254, 81 P3d 734 (2003), *rev den*, 336 Or 615 (2004) ("[W]hen exercising legislatively delegated decision-making authority, [an] agency ordinarily does so according to standards adopted in prior rulemaking; however, [an] agency may also develop its standards in [the] context of [a] particular case[.]") (citing *Marbet v. Portland Gen. Elect.*, 277 Or 447, 460-61, 561 P2d 154 (1977)). Further, to the extent that petitioner argues that BOLI misapplied those aggravating and mitigating factors, we are mindful that we must "not substitute [our] judgment

for that of the agency as to any issue of * * * agency discretion." ORS 183.482(7). The record shows that BOLI considered all of petitioner's mitigating evidence, but that it ultimately viewed the evidence of petitioner's prior offenses to warrant a one-year period of debarment.

■    Petitioner also argues that BOLI's imposition of a one-year period of debarment is so excessive and disproportionate to the offense committed that it necessarily falls outside the range of BOLI's discretion. To be sure, a one-year debarment is a significant penalty. In fact, we have described debarment as an "extreme sanction." *Labor Ready I*, 188 Or App at 359. However, given the statutory mandate that BOLI "shall" debar upon making certain findings and the fact that the agency's discretion extends to imposition of a three-year period, *former* ORS 279.361(1), we cannot say that a one-year debarment—only one-third of the maximum potential allowable sanction—is so excessive in the totality of the circumstances as to be outside the range of discretion committed to the agency.

Affirmed.