Argued and submitted October 25, 2007, judgment for Oregon State Police on
plaintiff's battery claim reversed and remanded; otherwise affirmed
August 13, 2008

Brenda BALLARD,
as personal representative of the Estate of
Philip Randall Ballard, deceased,
*Plaintiff-Appellant,*

*v.*

CITY OF ALBANY;
Linn County;
State of Oregon
and Oregon State Police,
*Defendants-Respondents,*

*and*

ALBANY POLICE DEPARTMENT;
Linn County Sheriff's Office;
Aaron Olympius, Rct - OSP;
Darrin Phillips, Sr Trp - OSP;
Alan Sprague, Sgt - Albany Police Department;
Ben Atcley, Cpl - Albany Police Department;
Robin McKnight, Ofc - Albany Police Department;
Troy Michelson, Ofc;
Dan Kloss, Ofc - Albany Police Department;
John Does 1-6;
Andy Olson, OSP Albany;
Curtis Hyde, Ofc - Albany Police Department
and Robert A. Rosage, Trp - OSP Albany,
*Defendants.*

Linn County Circuit Court
001570; A126379

191 P3d 679

Helen C. Tompkins argued the cause and filed the briefs for appellant.

Bruce L. Mowery argued the cause and filed the brief for respondents City of Albany and Linn County.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondents State of Oregon and Oregon State Police. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Plaintiff, personal representative of the estate of Philip R. Ballard (Ballard),[1] appeals a judgment for defendants City of Albany (city), Linn County (county), and the State of Oregon and the Oregon State Police (OSP) on plaintiff's negligence and battery claims. Plaintiff sought damages for personal injuries suffered during a traffic stop when police officers used a police dog to remove him from his car. As elaborated below, we affirm in part and reverse in part.

On July 20, 1998, an Oregon state police officer stopped plaintiff on a state highway in Albany, Oregon, because he suspected that plaintiff was driving while his license was suspended. Plaintiff was lawfully arrested. He refused to get out of his car, and state police officers called for backup from the city police. One city police officer brought a police dog. The use of force in arresting plaintiff gave rise to the claims in this case. Plaintiff's second amended complaint alleged that, in removing plaintiff from his car subsequent to his arrest, officers smashed plaintiff's front driver's window, used pepper spray and night sticks, and finally deployed the police dog to pull him from the car, causing him serious permanent injuries.

Following a motion for summary judgment, the trial court entered a limited judgment dismissing plaintiff's claims against the city and county, which plaintiff sought to set aside under ORCP 71. The trial court denied plaintiff's motion. The case then went to trial on plaintiff's remaining negligence and battery claims against OSP. The trial court directed a verdict for OSP on plaintiff's negligence claim and a partial directed verdict on the battery claim, removing from the jury's consideration the allegations relating to use of the police dog. The jury considered the remaining battery allegations against OSP and returned a verdict for OSP.

---

[1] Philip Ballard, who was involved in the incident that gave rise to the claims and filed the complaint, died after the filing of the notice appeal of causes unrelated to the claims, and his wife, plaintiff Brenda Ballard, has been substituted as appellant. Throughout this opinion, we refer to both Philip and Brenda Ballard as "plaintiff."

Plaintiff appeals the limited judgment dismissing his claims against the city and county, the order denying his motion to set aside the judgment, and the judgment dismissing his claim against OSP. His first three assignments of error relate to the trial court's rulings on the claims against the city and county. His remaining four assignments of error pertain to rulings on the OSP claims. We address them in turn as we describe the circumstances under which they arose during the various phases of the litigation.

We first address plaintiff's second assignment of error, in which he contends that the trial court erred in denying his motion under ORCP 71 B[2] to set aside the limited judgment in favor of the city and county on the ground of excusable neglect. Reasoning that the relief that plaintiff sought was controlled by ORCP 64, the trial court treated the motion as one for a new trial and denied it as untimely. Plaintiff contends that the summary judgment was entered against him because of his excusable neglect and that the trial court erred in denying his motion.

Plaintiff's claim of excusable neglect arises from the following circumstances. Plaintiff's original attorney withdrew from representation of plaintiff in March 2003. At that same time, plaintiff began to suffer serious health problems unrelated to this case. Over the next several months, plaintiff, acting *pro se*, requested several continuances of settlement conference and trial dates. In October 2003, defendants filed their answers to the second amended complaint. Plaintiff represented to the court and defendants that he had found an attorney and, with plaintiff's consent, the court set a trial date of March 2, 2004. Defendants requested the name of plaintiff's attorney, but it was not forthcoming.

In November 2003, the city and county notified plaintiff by letter that they intended to file a motion in December 2003 seeking dismissal of his claims. Those defendants filed a motion for summary judgment at that time.

---

[2] ORCP 71 B(1) provides, in part:

"On motion and upon such terms as are just, the court may relieve a party or such party's legal representative from a judgment for the following reasons: (a) mistake, inadvertence, surprise, or *excusable neglect*[.]"

(Emphasis added.)

Plaintiff, who continued to be unrepresented, requested a continuance of his time to respond. Although the court granted the continuance, plaintiff filed no written response or opposition to the motion. At the April 16, 2004, summary judgment hearing, plaintiff appeared without an attorney, and did not request a further postponement. Plaintiff did not contest defendants' motion, except to say that he did not understand the proceeding, that he was close to retaining counsel, and that he wished to have a jury trial.

The court granted the motion for summary judgment and entered a limited judgment in favor of the city and county on May 24, 2004. On June 18, 2004, after obtaining counsel, plaintiff filed arguments against the summary judgment motion, together with a motion, under ORCP 71 B and C, to set aside the limited judgment on the ground of excusable neglect. The trial court treated plaintiff's motion as a motion for new trial under ORCP 64 and denied it as untimely. Plaintiff filed a notice of appeal from the limited judgment and the order on October 20, 2004, 19 days after the court entered its order, and five months after entry of the limited judgment against the city and county. Plaintiff's appeal of the limited judgment was untimely. *See* ORS 19.255(1) ("[A] notice of appeal must be served and filed within 30 days after the judgment appealed from is entered in the register."). On defendants' motion to dismiss, we allowed the appeal to proceed on the order denying plaintiff's motion to set aside the limited judgment.

■   We agree with plaintiff that the substance of the motion fell under ORCP 71 B, because the ground for relief—excusable neglect—is available under ORCP 71 B(1)(a) but not under ORCP 64. *See Housley and Housley*, 202 Or App 182, 187, 120 P3d 1245 (2005) (motion seeking relief from judgment on ground of "excusable neglect" after moving party, having filed an answer, failed to appear at trial, was motion under ORCP 71 B and not ORCP 64). We conclude that the trial court therefore erred in treating the motion as one under ORCP 64.

■   However, as an alternative ground for its ruling, the court also found that "[plaintiff's] conduct in failing to adequately respond to the Motion for Summary Judgment did

not constitute excusable neglect." The court thus made the determination required by ORCP 71 B(1)(a). We review that determination for an abuse of discretion, *Wood v. James W. Fowler Co.*, 168 Or App 308, 311, 7 P3d 577 (2000), and will not disturb it "except for manifest abuse of such discretion." *Pacheco v. Blatchford*, 91 Or App 390, 392, 754 P2d 1219, *rev den*, 306 Or 660 (1988).

In support of his motion to set aside the limited judgment, plaintiff explained by affidavit that his failure to respond to the summary judgment motion was the result of his lack of understanding of the proceedings and his continued inability to find an attorney to represent him after his first attorney withdrew in March 2003. He stated that, between March 2003 and the date of the April 2004 hearing, he consulted with four law firms without success. Plaintiff noted that he had thought that his former attorney would resume representation, but that reengagement failed. Further, plaintiff explained that he became seriously ill in March 2003, was twice hospitalized, and was diagnosed with only a few months to live. Plaintiff averred that, "[b]ecause of the severity of my illness and the treatment and medications, I was unable to think clearly and did not have the strength or stamina to actively work on pending legal matters." Plaintiff stated that he finally retained an attorney on May 26, 2004, and that, within a few weeks, the new attorney filed the motion to set aside the judgment, as well as a response to the motion for summary judgment.

Plaintiff offers reasonable excuses for why he had not retained an attorney to represent him and why he did not file any response to the city and county's motion for summary judgment. Although we have never before held that a plaintiff's inability to retain an attorney is excusable neglect under ORCP 71, we do not foreclose it. *But see Christian v. SAIF*, 32 Or App 205, 208, 573 P2d 763, *rev den*, 282 Or 385 (1978) (difficulty retaining attorney would not constitute excusable neglect under predecessor statute). Each case must be considered on its own facts. Morever, illness can be a ground for setting aside a judgment under ORCP 71 B. *See, e.g., National Mortgage Co. v. Robert C. Wyatt, Inc.*, 173 Or App 16, 24, 20 P3d 216, *rev den*, 332 Or 430 (2001). As the Supreme Court explained in *Hiatt v. Congoleum Industries*,

279 Or 569, 579, 569 P2d 567 (1977) (quoting *Wagar v. Prudential Ins. Co.*, 276 Or 827, 833, 556 P2d 658 (1976)), "[o]rdinarily, if [a movant] presents reasonable grounds excusing his default, the courts are liberal in granting relief." However, the trial court heard plaintiff's reasons and apparently did not believe that plaintiff's illness had prevented him from retaining an attorney to represent him in time to respond to the motion for summary judgment or from responding without an attorney. *See Knutsen v. Sager*, 134 Or App 104, 109, 894 P2d 1204, *rev den*, 321 Or 396 (1995). Based on the record before us and in light of our standard of review, we conclude that the trial court did not abuse its discretion in denying the motion to set aside the limited judgment in favor of the city and county.[3]

Plaintiff's claims against OSP, for negligence and battery, went to trial in March 2005. On the day of trial, plaintiff sought leave to amend his complaint, pursuant to ORCP 23 A, to allege that the city's police officers had acted as agents of OSP in deploying the police dog, that the city officers were within the control of OSP, and that OSP therefore is vicariously liable for the conduct of the city police officers. The trial court denied the motion, explaining that "it's too late to amend the pleadings. We're about to start this trial." Plaintiff asserts that the trial court's denial of his motion to amend the complaint prevented him from proving that OSP controlled the city's deployment of the police dog and prevented the jury from holding OSP liable in negligence and battery for injuries caused by the dog's deployment. He assigns that ruling as error.

Apart from amendments that are allowed as a matter of right under ORCP 23 A,[4] a trial court has broad discretion in determining whether to allow a party to amend the

---

[3] Our conclusion obviates the need to address plaintiff's first and third assignments of error. Plaintiff's first assignment of error was that the court erred in not granting an extension of time to oppose the summary judgment in favor of the city and county. The third assignment of error complains about the effective date of the order denying the motion to set aside the limited judgment.

[4] ORCP 23 A provides, in part:

"A pleading may be amended by a party once as a matter of course at any time before a responsive pleading is served * * *. Otherwise a party may amend the pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

pleadings. We review the trial court's ruling denying the motion to amend the complaint for an abuse of discretion. *Crandon Capital Partners v. Shelk*, 219 Or App 16, 40, 181 P3d 773 (2008). The Supreme Court has said that the trial court has "ample discretionary authority to allow amendments, provided the proffered amendment does not substantially change the cause of action or interject an entire new element of damage." *Cutsforth v. Kinzua Corp.*, 267 Or 423, 433-34, 517 P2d 640 (1973) (citation omitted). The trial court abuses its discretion if it exercises it in a manner that is unjustified by, and clearly against, reason and evidence. *Quillen v. Roseburg Forest Products, Inc.*, 159 Or App 6, 10, 976 P2d 91 (1999).

██ In evaluating the trial court's ruling, we consider

"(1) the nature of the proposed amendments and their relationship to the existing pleadings; (2) the prejudice, if any, to the opposing party; (3) the timing of the proposed amendments and related docketing concerns; and (4) the colorable merit of the proposed amendments."

*Safeport, Inc. v. Equipment Roundup & Mfg.*, 184 Or App 690, 699, 60 P3d 1076 (2002), *rev den*, 335 Or 255 (2003) (quoting *Ramsey v. Thompson*, 162 Or App 139, 147, 986 P2d 54 (1999), *rev den*, 329 Or 589 (2000)). Those considerations support the trial court's ruling. Plaintiff's second amended complaint generally alleged that each of the defendants had deployed the police dog but separately specified that the Albany police had deployed the dog. The proposed amendment would have alleged that OSP controlled the city's deployment of the dog because the city police were "acting at the direction and under the behest of the Oregon State Police during the course of this arrest." That different theory of liability would have substantially changed the claim in a way that would have required different rebuttal evidence and that could have necessitated a postponement of trial. Those reasons alone support the trial court's ruling. *See Pro Car Care, Inc. v. Johnson*, 201 Or App 250, 259, 118 P3d 815 (2005); *see also American Fed. Teachers v. Oregon Taxpayers United*, 208 Or App 350, 145 P3d 1111, *adh'd to on recons*, 209 Or App 518, 525-26, 149 P3d 159 (2006), *aff'd*, 345 Or 1, 189 P3d 9 (2008) (pleading alleging that defendants acted in

concert did not adequately set forth theory that defendants should be vicariously liable for damages caused by each other).[5] Additionally, the timing of the request, with no offered explanation for the delay, also weighed against allowance of the amendment. We conclude that the trial court did not abuse its discretion in denying plaintiff's motion to amend the complaint.

■ After the close of the evidence, OSP moved for a directed verdict on both the negligence and battery claims. The trial court ruled that the evidence was insufficient to allow the jury to consider plaintiff's negligence claim and granted OSP's motion for directed verdict. The trial court also granted a partial directed verdict on the battery claim, ruling that the allegations relating to injuries caused by the dog would not go to the jury. In light of that, the court also excluded evidence of plaintiff's injuries caused by the dog. The court submitted the remaining allegations on the battery claim to the jury, and the jury returned a verdict for OSP.

■ Plaintiff assigns error to the court's granting of OSP's motion for directed verdict on the negligence claim. A directed verdict for a defendant on a negligence claim is appropriate only if the court can affirmatively say that there is no evidence from which a jury could find facts necessary to establish each element of the claim. *See Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). We review the trial court's granting of OSP's motion for whether, on the basis of the evidence viewed in the light most favorable to plaintiff, and all reasonable inferences that may be drawn from it, OSP was entitled to prevail as a matter of law. *Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or App 553, 578, 152 P3d 940 (2007). In reviewing the ruling, the court "is not to weigh conflicting evidence or evaluate credibility." *Fang v. Li*, 203 Or App 481, 485, 125 P3d 832 (2005) (quoting *City of Medford v. Herbison*, 57 Or App 496, 500, 645 P2d 563, *rev den*, 293 Or 394 (1982)).

---

[5] Contrary to plaintiff's contention, the fact that he might have submitted some evidence in support of the proposed legal theory under the second amended complaint did not require that the trial court allow the amendment. *See Permapost Products Co. v. Osmose, Inc.*, 200 Or App 699, 705, 116 P3d 909 (2005) (presentation of evidence at trial in support of a different theory of liability does not require that pleadings be treated as amended to include that theory of liability).

As pertinent to this assignment of error, plaintiff's second amended complaint alleged that OSP was negligent:

"1.   In deploying a police dog when it was completely unnecessary and in violation of their internal policies and accepted standards for deployment of police dogs;

"2.   In failing to prevent deployment of the police dog in violation of policies and procedures[.]"

Because the motion for summary judgment was made against the entire claim, the motion should not have been granted if there was evidence in support of either specification of negligence. *Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 176, 61 P3d 928 (2003). Thus, the viability of the negligence claim depends on proof that OSP (1) deployed or failed to prevent deployment of the police dog (2) in violation of OSP policies, procedures, and accepted standards.

On appeal, plaintiff argues that there was evidence from which the jury could have found that OSP was negligent under two possible theories: a general standard of foreseeability of harm or a special duty of care imposed on a state police officer to protect an arrestee from use of excessive force and unreasonable harm. The difficulty with plaintiff's argument is that it presents on appeal theories of negligence that were not pleaded. As noted, each of the pleaded specifications of negligence describes a duty derived from OSP policies or standards. Plaintiff refers to no evidence in the record of OSP standards or practices regarding police dogs. Plaintiff describes testimony of the OSP officer who stopped plaintiff that he believed he would have had a duty to stop the use of the dog if he had believed it was excessive. However, that testimony was not evidence of OSP's policy or standards on the use of police dogs. OSP did, however, offer uncontroverted evidence that OSP does not use dogs in making arrests and has no policies or standards relating to that practice. Accordingly, we conclude that the trial court did not err in granting OSP's motion for directed verdict on the negligence claim.

The second amended complaint alleged that defendants committed battery, an intentional tort, when "[d]efendants intentionally and recklessly deployed their police dog, sprayed, beat and attacked" plaintiff. A "battery"

is a "voluntary act that is intended to cause the resulting harmful or offensive contact." *Walthers v. Gossett*, 148 Or App 548, 552, 941 P2d 575 (1997). It is possible to be held liable for battery under an "aiding and assisting" theory, if a defendant participated in, aided or procured the battery, and acted with the requisite mental state of intending to cause harmful or offensive contact, or understanding that a tort will be committed by the other when he aids him. *Id.* Conversely, a police officer is justified under Oregon law in using physical force when he or she believes it is reasonably necessary to make an arrest,[6] *see Gigler v. Klamath Falls*, 21 Or App 753, 763, 537 P2d 121 (1975), and a police officer is presumed to be acting in good faith in determining the amount of force necessary to make the arrest. *Rich v. Cooper*, 234 Or 300, 309, 380 P2d 613 (1963). However, the use of excessive force by a police officer in carrying out an arrest can give rise to civil liability for battery.

Plaintiff does not dispute that, in refusing to get out of the car, he resisted a lawful arrest,[7] and that police were authorized to use reasonable force to arrest him. He contends, however, that the trial court erred in withdrawing from the jury's consideration that portion of the battery claim relating to the use of the dog. Plaintiff reasons that there is evidence from which it could be found that state police officers ordered the city police officer to deploy the dog knowing that it would cause plaintiff harm and that, in directing deployment of the dog, state police thereby used excessive force. We agree that there is that evidence.[8] There was also

---

[6] ORS 161.235 provides:

"Except as provided in ORS 161.239 [prescribing use of deadly physical force in some cases], a peace officer is justified in using physical force upon another person only when and to the extent that the peace officer reasonably believes it necessary:

"(1) To make an arrest or to prevent the escape from custody of an arrested person unless the peace officer knows that the arrest is unlawful; or

"(2) For self-defense or to defend a third person from what the peace officer reasonably believes to be the use or imminent use of physical force while making or attempting to make an arrest or while preventing or attempting to prevent an escape."

[7] Charges of driving while suspended, resisting arrest, and assaulting a police officer were filed against plaintiff but ultimately dismissed.

[8] An expert witness testified that use of the dog to remove plaintiff was excessive force under the circumstances. Plaintiff testified that, in their attempts to

evidence that the use of the dog was necessary to remove plaintiff from his car and not excessive, that the state police officers did not control the dog, request the use of the dog, or command the city police officer to use the dog, and that the city police officer alone was responsible for determining the

---

remove him from his vehicle, police had broken out the driver's side window, tried to pull him out by his body, shirt, and hair, used pepper spray, and beat him with their batons. They then used the dog:

"And [the state police officers] instructed the Albany police officer, they said, 'You got a dog, go get your dog.'

"[Plaintiff's counsel]: How did the officer, Albany officer that had the dog, how did he respond?

"[Plaintiff]: He said, 'This situation for driving while suspended does not warrant my dog. I do not want to go get my dog.'

"* * * * *

"[Plaintiff]: They repeated—they had a discussion, like you said, for a short period of time. And [the state police officer] said go get—finally said, 'Go get your damn dog. At least go get it and show it to him.'

"[Plaintiff's counsel]: Okay. Continue.

"[Plaintiff]: So he went back to the car, brought out the dog on the passenger side and showed me the dog.

"[Plaintiff's counsel]: You're talking about the Albany Police Department?

"[Plaintiff]: The Albany Police Department did.

"[Plaintiff's counsel]: Okay. Continue.

"[Plaintiff]: And the dog had a head about that big it looked like to me, it was huge. I mean that thing's—and I believe it was [a state police officer] that said, 'Have you ever seen what one of these dogs can do?' Well, I'm not exactly in a chatty mood, so I didn't respond to that.

"[Plaintiff's counsel]: Okay. Continue.

"[Plaintiff]: Well, I—at this particular point I'm having—I'm in serious pain, I'm still trying to keep my wits about me, and the dog was looking at me. I did make this comment, I said, 'That's a pretty dog,' or a good looking dog, that's what I said to the dog handler. That's all I said about the dog.

"* * * * *

"[Plaintiff]: Then—[a state police officer] said, 'Let the dog loose.' And [another state police officer] and him agreed that yeah, you need to let this dog loose on him, get him out of this vehicle. He says—he disagreed again, three or four times he disagreed.

"[Plaintiff's counsel]: Who disagreed?

"[Plaintiff]: * * * [T]he Albany police officer that had the dog.

"* * * * *

"[Plaintiff]: And he says—and then he finally says, 'They're gonna make me release this dog on you, you better get out.'

"* * * * *

"[Plaintiff]: [The Albany officer] took the leash off the dog, and he commanded the dog to attack."

appropriate use of the dog. Our job on review is not to weigh or evaluate the evidence, but to determine whether, viewing the evidence in the light most favorable to plaintiff, and all reasonable inferences that may be drawn from it, there was evidence from which a jury could find facts necessary to establish each element of the battery claim. We conclude that there was that evidence and that whether the evidence established that excessive force was used in arresting plaintiff is for the jury to decide. We conclude, therefore, that the trial court erred in removing the battery allegation relating the use of the dog from the jury's consideration and in excluding from evidence photographs of plaintiff's injuries caused by the dog. Accordingly, the judgment in favor of OSP on plaintiff's battery claim must be reversed and remanded.

Judgment for Oregon State Police on plaintiff's battery claim reversed and remanded; otherwise affirmed.