Argued and submitted September 17, 2018, affirmed May 20, petition for review denied August 27, 2020 (366 Or 826)

GREEN THUMB LANDSCAPE AND
MAINTENANCE, INC.,
aka Green Thumb Landscape,
aka GT General Contracting; and
Green Thumb LLC, aka Green Thumb Contracting;
CJ Construction, Inc.; Scott Friedman, individually;
and Jennifer Friedman, individually,
*Petitioners,*

*v.*

BUREAU OF LABOR AND INDUSTRIES,
*Respondent.*

Bureau of Labor and Industries
6215, 1516; A164444

467 P3d 43

Based on its finding that petitioners intentionally misclassified Bricklayers as Landscape Laborers for their work laying pavers with mortar, resulting in underpayment of wages, the Bureau of Labor and Industries (BOLI) debarred petitioners from receiving any contract or subcontract for public works for three years. In their petition for judicial review, petitioners argue that BOLI's conclusion on intentionality is not supported by substantial evidence. *Held*: The record shows that the prevailing wage rate for laying pavers with mortar was clearly identifiable by reference to the documents provided by BOLI, which petitioners were familiar with and had used in the past. Thus, BOLI's determination that petitioners acted intentionally in misclassifying workers was a permissible non-speculative inference, supported by substantial evidence.

Affirmed.

Tricia M. Olson argued the cause for petitioners. Also on the briefs was Heltzel Williams PC.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and James, Judge, and Sercombe, Senior Judge.

JAMES, J.

Affirmed.

**JAMES, J.**

Petitioners are landscape contractors who performed work on two different public works projects. For one of those projects—the Fields Neighborhood Park—petitioners' bid included work laying paving stones. Petitioners classified that work as Landscape Laborer, a classification that carried a particular prevailing wage rate. As all parties acknowledge, that was incorrect. The parties agree that the correct classification for the paving work was Bricklaying, a classification with a considerably higher prevailing wage rate. At a hearing before an administrative law judge, petitioners stipulated to violation of some of the prevailing wage rate laws, but contested other allegations of violation and asserted that there was no basis for debarment. The Bureau of Labor and Industries (BOLI) concluded:

> "[Petitioners either] made a choice to make no further inquiry after reading the [Landscape Laborer] definition that made no reference to pavers, or (2) [petitioners were] aware that [petitioners'] workers should have been paid as Bricklayers for their paver work but chose to pay them as [Landscape Laborers]. Under (1), [petitioners] consciously chose not to determine the prevailing wage. Under (2), [petitioners] knew the prevailing wage but consciously choose not to pay it. Either way, [the] behavior was intentional."

Based on its finding of intentional behavior, BOLI imposed its harshest sanction, debarring petitioners by placing them on the list of contractors ineligible to receive any contract or subcontract for public works for a period of three years. Petitioners petition for judicial review, arguing essentially that BOLI's conclusion on intentionality is not supported by substantial evidence. We affirm.

Our disposition in this case is driven by our standard of review. While we review BOLI's legal conclusions for errors of law, ORS 183.482(8)(a), we review BOLI's factual findings for substantial evidence. ORS 183.482(8)(c); *Labor Ready Northwest, Inc. v. BOLI*, 208 Or App 195, 200, 145 P3d 232 (2006), *rev den*, 342 Or 473 (2007). We do not reweigh the evidence or "examine the record to determine whether evidence supports a view of the facts different from those found by the agency." *Multnomah County Sheriff's Office v.*

*Edwards*, 361 Or 761, 776, 399 P3d 969 (2017). Rather, an agency's findings of fact are binding on us unless those findings are not supported by substantial evidence in the record viewed as a whole. *Id*.

The facts that give rise to this case are largely undisputed. Green Thumb Landscape and Maintenance, Inc. (GTM), is an Oregon corporation, with Scott Friedman and Jennifer Friedman as its corporate officers. The other petitioners are also companies owned or operated by one of the Friedmans.

R&R General Contractors, Inc. (R&R), was the winning general contractor in a bid for a public works project by the City of Portland for the Fields Neighborhood Park, known as the Fields project. GTM was a winning subcontractor to R&R on that project for landscape work. GTM's bid for the Fields Project totaled $417,347 with $47,435 of that amount comprising paver work. In the bid, GTM used the Landscape Laborer classification for the paver work.

For contractors bidding on public works jobs, BOLI publishes a definitions booklet that defines the trades or occupations and provides the prevailing wage that must be paid to employees performing that classification of work. The definitions booklet includes a "Cross Reference of Covered Occupations" section, which offers further detail and clarification.

Scott Friedman, who had worked on public works projects previously, was familiar with how to use the definitions booklet, which contained the cross-reference section, and in fact used the booklet in creating his bid for the Fields Project.

The definition in the booklet for a Landscape Laborer focused on activities typically associated with gardening. It did not mention pavers. The definition for a Bricklayer focused on activities involving stone and brickwork. It, also, did not specifically mention pavers. However, the cross-reference section specified that "paver setting" involving mortar fell within the "Bricklayer" classification. Paver setting not involving mortar did not. The paver setting at issue

in this case was to be completed using mortar, which was reflected in petitioners' bid and in the contract.

On July 14, 2014, BOLI sent a letter to Scott Friedman stating that it determined GTM owed eight of its workers additional wages, totaling $19,980.49, for their work performed on the Fields Project. Of that total, $19,111.76 was found owing to two GTM employees, with almost all of the underpayment due to their classification as Landscape Laborers instead of Bricklayers when performing the paver work. Petitioners stipulated to the classification error for these two employees.

On June 26, 2015, BOLI issued petitioners a Notice of Intent to Assess Civil Penalties and Place on List of Ineligibles in connection with the Fields Project. On December 8, 2015, BOLI issued petitioners a Notice of Intent to Place on List of Ineligibles and Assess Civil Penalties for work on another public works project known as the Elmonica Project. BOLI moved to consolidate the two cases, and the hearing began on June 21, 2016. Ultimately, BOLI assessed penalties against GTM in the Fields Project case and ordered that petitioners be debarred from public projects for a period of three years.

We now turn to the governing statutory scheme. ORS 279C.840 provides that all public works contractors and subcontractors must pay their employees not less than the "prevailing rate of wage for an hour's work in the same trade or occupation in the locality where the labor is performed." ORS 279C.840(1). BOLI sets the "prevailing rate of wage" based on "the rate of hourly wage *** paid in the locality to the majority of workers employed on projects of similar character in the same trade or occupation." ORS 279C.800(4); ORS 279C.815(2).

The statutory scheme provides for a three-tiered penalty structure. First, a contractor that pays its employees "less than the prevailing rate of wage" "is liable to the workers affected in the amount of the workers' unpaid minimum wages, including all fringe benefits, and in an additional amount equal to the unpaid wages as liquidated damages." ORS 279C.855(1). Second, BOLI may "assess a civil penalty not to exceed $5,000 for each violation" of the

prevailing wage laws. ORS 279C.865(1). Finally, BOLI is required to "add a contractor's or subcontractor's name" to a list of contractors ineligible for public works contracts for three years upon finding any of the following:

"(a)  The contractor or subcontractor intentionally failed or refused to pay the prevailing rate of wage to workers employed upon public works;

"(b)  The contractor failed to pay to the contractor's employees amounts required under ORS 279C.840 [prevailing rate of wage] and a surety or another person paid the amounts on the contractor's behalf;

"(c)  The subcontractor failed to pay to the subcontractor's employees amounts required under ORS 279C.840 [prevailing rate of wage] and the contractor, a surety or another person paid the amounts on the subcontractor's behalf;

"(d)  The contractor or subcontractor intentionally failed or refused to post the prevailing rates of wage as required under ORS 279C.840 (4) [prevailing rate of wage]; or

"(e)  The contractor or subcontractor intentionally falsified information in the certified statements the contractor or subcontractor submitted under ORS 279C.845 [certified statements regarding payment of prevailing rates of wage]."

ORS 279C.860(1)(a) - (e).

An employer intentionally fails to pay the prevailing rate of wage under two circumstances: either by consciously choosing "not to determine the prevailing wage" or by knowing "the prevailing wage but consciously [choosing] not to pay it." *Labor Ready Northwest, Inc. v. BOLI*, 188 Or App 346, 364, 71 P3d 559 (2003), *rev den*, 336 Or 534 (2004). The statute requires more than simple negligence on the contractor's part. Rather, it requires conscious volition by the contractor to either fail to educate itself on the prevailing wage rate, or if that wage rate is known, to consciously fail to pay it.

Proving the mental state of an actor does not require direct evidence. Such evidence is often impossible to obtain. *State v. Rose*, 311 Or 274, 282, 810 P2d 839 (1991). Rather, an actor's mental state "is usually established by

a consideration of objective facts, and from these objective facts an ultimate conclusion is drawn." *State v. Elliott*, 234 Or 522, 528-29, 383 P2d 382 (1963). Accordingly, mental state is routinely established through circumstantial evidence and reasonable inference. *Delgado v. Souders*, 334 Or 122, 135, 46 P3d 729 (2002). However, when relying on inference to establish a mental state, the inference cannot require "too great an inferential leap"—meaning an inference that is dependent on logic that is too strained or one that requires the stacking of inferences to the point of speculation. *State v. Bivins*, 191 Or App 460, 466-68, 83 P3d 379 (2004).

On judicial review, petitioners advance a series of related arguments that, in essence, renew the arguments presented to BOLI. Petitioners point to favorable evidence in the record and, based on that evidence, argue that BOLI's conclusion is not supported by substantial evidence. Those arguments misconstrue the nature of our task. Here, our review is confined to assessing whether the record, viewed as a whole, contains substantial evidence to support BOLI's conclusion that petitioners acted intentionally. Judicial review of BOLI's order is not a forum to relitigate the evidence, nor to invite us to "examine the record to determine whether evidence supports a view of the facts different from those found by the agency." *Edwards*, 361 Or at 775-76.

We conclude that BOLI's conclusion as to intent is supported by substantial evidence in the record. While there is certainly evidence that might support an alternative conclusion—namely that petitioners' misclassification was not intentional but merely negligent—we are not tasked with making that conclusion anew. Whether we would find intent on this record is not the question. Rather, the question is whether this record contains substantial evidence that could permit BOLI to find intent, as it did.

The record shows that the prevailing rate for laying pavers with mortar was clearly identifiable by reference to documents provided by BOLI, including the cross-reference section. This is not a case where any party is asserting that the classification was vague, or incapable of determination. Additionally, the record contains evidence that petitioners

were familiar with the prevailing wage rate requirements of public works projects and had consulted with BOLI on determining those rates in past projects. Further, Scott Friedman had been investigated for prevailing wage violations in the past and, as a result of that investigation, had entered into two compliance agreements, which required that he certify that he had read and understood the prevailing-wage statutes and regulations. These facts create a reasonable, nonspeculative inference that petitioners knew that consulting the cross-reference section could be necessary to determine the correct classification of a job to determine the prevailing wage. Against that backdrop, Scott Friedman testified that he could not remember whether he consulted the cross-reference publication. From those facts, while BOLI was not obligated to find intent, it was a permissible nonspeculative inference that petitioners acted intentionally by choosing "not to determine the prevailing wage[.]" *Labor Ready Northwest, Inc.*, 188 Or App at 364.

BOLI's determination was supported by substantial evidence. We therefore affirm.

Affirmed.