No. 140 February 26, 2025 201

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Phyllis TAYLOR,
an individual,
*Plaintiff-Appellant,*

*v.*

Suzan GOODMAN,
an individual,
*Defendant,*
*and*

THE CITY OF EAGLE POINT,
an Oregon Municipal Corporation,
*Defendant-Respondent.*

Jackson County Circuit Court
21CV21976; A182251

Timothy Barnack, Judge.

Argued and submitted January 28, 2025.

Michael W. Franell filed the briefs for appellant.

Louis L. Kurtz argued the cause for respondent. Also on the brief was Louis L. Kurtz, P.C.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

Plaintiff asserted a negligence claim against the City of Eagle Point (the city) after she tripped on an "elevated pad" in a sidewalk and sustained significant injuries. The trial court granted a directed verdict in the city's favor. Plaintiff appeals the resulting judgment, assigning error to that ruling. For the reasons that follow, we affirm.[1]

A directed verdict "for a defendant on a negligence claim is appropriate only if the court can affirmatively say that there is no evidence from which a jury could find facts necessary to establish each element of the claim." *Ballard v. City of Albany*, 221 Or App 630, 639, 191 P3d 679 (2008). Thus, we review the trial court's granting of the city's motion "for whether, on the basis of the evidence viewed in the light most favorable to plaintiff, and all reasonable inferences that may be drawn from it," the city "was entitled to prevail as a matter of law." *Id.*

We conclude the trial court did not err—that is, the city was entitled to prevail as a matter of law. Plaintiff's complaint asserted that the city "owes a duty to the public *to prevent installation* of a sidewalk in such a manner that it creates a situation in which it is likely to cause harm to a person utilizing the sidewalk" and that the city was "negligent in *allowing* an obstruction *to be placed in the sidewalk* without requiring some form of warning to the pedestrians that utilize the sidewalk." (Emphases added.) And, on appeal, plaintiff asserts that the city "had a duty to make sure that a sidewalk is not constructed in the right of way in such a manner as to constitute a hazard."

The difficulty with plaintiff's claim is that there is no evidence of how the city breached its "duty" to "prevent" installation of the sidewalk (assuming that the city had

---

[1] Plaintiff also assigns error to the trial court granting a partial directed verdict in favor of defendant Suzan Goodman and to various evidentiary rulings by the trial court. But while this case was pending on appeal, plaintiff dismissed the appeal as to Goodman.

Given the dismissal of Goodman, the grounds upon which the trial court granted the city's motion for directed verdict, and our conclusion in this opinion that the trial court did not err in granting the city's motion for directed verdict, we conclude that any errors identified in the evidentiary rulings that plaintiff challenges on appeal are harmless.

such a duty) or "allow[ed]" an "obstruction to be placed in the sidewalk." Or framed slightly differently, there was no evidence that the city acted unreasonably with regard to the construction of the sidewalk. *See Towe v. Sacagawea, Inc.*, 357 Or 74, 86, 347 P3d 766 (2015) (observing that, in Oregon, generally the "more traditional duty-breach analysis in an ordinary negligence claim is supplanted by the question whether the defendant's conduct resulted in a foreseeable and unreasonable risk of harm of the kind that the plaintiff suffered").

Here, viewed in the light most favorable to plaintiff, the evidence established that the sidewalk was constructed sometime around 1980; that, at that time, the city required a party seeking to construct a sidewalk to apply for a permit to construct the sidewalk; and that, had a permit been issued and a sidewalk constructed pursuant to that permit, a representative of the city would have inspected the finished sidewalk.

But the evidence also reflects that no permit to construct the sidewalk was ever applied for; no permit to construct it was ever issued by the city; and, consequently, no inspection was performed by the city when the sidewalk was constructed. Nor, prior to plaintiff's injury, had the city ever received a complaint about the sidewalk.[2]

Given those factual circumstances, the allegations of negligence in the complaint, and the arguments on appeal, we conclude that the trial court did not err in granting the city's motion for a directed verdict. *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987) ("[U] nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually

---

[2] We note that, under Eagle Point Municipal Code 12.04.020, owners of property have the obligation to "maintain all sidewalks abutting upon their property in good condition and safe for use by the public."

Further, we note that Eagle Point Municipal Code 12.04.050 through 12.04.090 sets forth a process for remediation of sidewalks that are "unsafe or hazardous for public use" upon notice to the city of the existence of such conditions. As indicated above, the city never received notice that the sidewalk upon which plaintiff was injured was "unsafe or hazardous for public use" prior to plaintiff's injury.

resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff.").

On appeal, in seeking a contrary result, we understand plaintiff to contend that a jury could infer that the city had actual knowledge that the sidewalk was being constructed without a permit when it was constructed, because the "sidewalk is along a major street and the City testified they had regularly seen pedestrian traffic along the sidewalk." We also understand plaintiff to argue that, even if the city did not have actual knowledge of the sidewalk's construction, the jury could infer "the city should have been aware of the construction of the sidewalk" because the record reflects the sidewalk is presently "next to the public works shop." And given those inferences, we understand plaintiff to contend that the city should have taken some action to stop the unpermitted construction of the hazardous sidewalk when it was constructed.

Ultimately, however, we think the inferences that plaintiff would seek to have the jury draw about what the city knew or should have known when the sidewalk was constructed sometime around 1980 cannot permissibly be drawn from the evidence plaintiff points to, which concerns the property as it sat at the time of trial in 2022, over 40 years after the sidewalk was constructed. *See Green Thumb Landscape and Maintenance v. BOLI*, 304 Or App 349, 354, 467 P3d 43, *rev den*, 366 Or 826 (2020) ("However, when relying on inference to establish a mental state, the inference cannot require too great an inferential leap—meaning an inference that is dependent on logic that is too strained or one that requires the stacking of inferences to the point of speculation." (Internal quotation marks omitted.)).

Plaintiff also contends, citing *Brookwell v. Frakes*, 56 Or App 687, 642 P3d 1183, *rev den*, 56 Or App 687 (1982), that "a City can be liable for damages caused to a person from failure to maintain a sidewalk." That may be true in some circumstances. But given the allegations of negligence regarding the city in the complaint coupled with the arguments on appeal, which relate to the city's conduct when the

sidewalk was constructed, we conclude that the trial court did not err in granting the city's motion for directed verdict, because plaintiff did not show that the city knew or had reason to know of any defect in the sidewalk at that time or that it otherwise acted in an unreasonable fashion with regard to the installation of the sidewalk.

Affirmed.